IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| The Armenian Genocide Museum and Memorial, Inc.,<br><br>*Plaintiff*,<br><br>v.<br><br>The Cafesjian Family Foundation, Inc.; and John J. Waters, Jr.,<br><br>*Defendants*. | Civil. File No. 1:07-cv-01259 (CKK)<br><br>**ORAL ARGUMENT REQUESTED**<br><br><br><br>Status hearing: November 3, 2008 (9:00 AM) |

**DEFENDANTS' SUGGESTION OF MOOTNESS**

The Defendants, The Cafesjian Family Foundation, Inc. ("CFF") and John J. Waters, Jr. ("Waters"), respectfully submits that the First Amended Complaint filed by the Armenian Genocide Museum and Memorial, Inc. ("AGM&M") is moot. This suit involves the question of whether Mr. Waters, while an officer in both CFF and AGM&M, had authority to record a Memorandum of Agreement, *on AGM&M's behalf*, which gave public notice of CFF's reversionary interest in six AGM&M properties located in the District of Columbia. It is undisputed, however, that Mr. Waters has the authority to record documents on *CFF's* behalf. On July 16, 2008, he did just that, and recorded a release of the Memorandum of Agreement.

The properties here were part of a conditional grant from CFF to the Armenian Assembly of America, Inc. ("Assembly"), the obligations of which were transferred to AGM&M. That grant is part of a larger dispute wherein AGM&M is refusing to meet the conditions of the grant, and is attempting to void CFF's reversionary rights. As a part of that dispute, CFF filed a *lis pendens* to protect its reversionary interest. This rendered the Memorandum of Agreement

largely superfluous, and out of a desire to streamline the multiple suits between the parties, CFF and Mr. Waters have now released it.[1] And because *this* suit does not seek to invalidate the reversion itself, but rather only seeks to invalidate the Memorandum of Agreement, this matter is moot because that relief has now occurred, and because the asserted injury—Mr. Water's execution and recordation of a Memorandum of Agreement on behalf of AGM&M—cannot be repeated as he has since resigned as an officer in AGM&M. For the same reason, Defendants' sole counterclaim, which seeks a declaration that AGM&M improperly filed this lawsuit, is likewise moot. The Court should thus dismiss this case for lack of jurisdiction.

## BACKGROUND

This matter is one of several pending cases ultimately involving a dispute among three nonprofit corporations—CFF, the Assembly, and AGM&M—with respect to the development of a Washington, D.C. museum and memorial dedicated to commemorating the Armenian Genocide. In 1997, the Assembly persuaded Gerard L. Cafesjian—a former Executive Vice-President of West Publishing, founder of CFF, and supporter of Armenian causes—to pledge financial support for an Armenian Genocide museum and memorial. (Dkt. No. 26, ¶ 7 & n.2)

This support included a loan and donation which helped the Assembly purchase property to be used for the museum and memorial. The first donation, supplemented with a loan, helped the Assembly to purchase the Bank of Washington building located at 14th and G Streets, N.W. (Dkt. No. 30-3, at 4). It was later determined that additional nearby properties were needed to build a proper museum and memorial. The parties took several steps to facilitate these purchases.

---

[1] At the time CFF's present counsel was retained, there were six active suits on this matter—three arising in the District of Minnesota and three in this Court. Pursuant to CFF's streamlining, two of the Minnesota matters have been dismissed and the third, *Waters et al. v. Armenian Genocide Museum & Memorial, Inc., et al.*, No. 08-cv-00373 (D. Minn), was transferred to this Court yesterday, July 16, 2008 (though it does not yet appear on this Court's docket). CFF is also filing today a comprehensive set of its claims in both No. 07-cv-1746-RWR (through a motion seeking leave to amend) and No. 08-cv-00255-CKK (as initial counterclaims). Should this case be moot, only three suits will remain, and all of them will be fit for consolidation.

*First*, Mr. Cafesjian, CFF, and the Assembly caused AGM&M to be formed in October of 2003 as the entity which would operate the museum and memorial. (Dkt. No. 26, ¶ 9).

*Second*, on November 1, 2003, Mr. Cafesjian, CFF, and the Assembly entered into a Grant Agreement, whereby CFF pledged $12.85 million towards the purchase of the additional properties, located at 1334-36, 1338, 1340, and 1342 G Street, N.W. (Dkt. No. 26 Ex. A §§ 2.1, 2.2). The Agreement provided that the properties could only be used as a part of the museum and memorial (*Id.* Ex. A § 3.1(A)). In total, Mr. Cafesjian and CFF have contributed over $17 million dollars to the Assembly and AGM&M. CFF holds a reversionary interest in all of the Grant Properties that would vest if the properties were not developed prior to December 31, 2010, in accordance with trustee-approved plans, or if they were not developed in substantial compliance with such plans. (*Id.* Ex. A § 3.1(B)).

*Third*, also on November 1, 2003, the Assembly and AGM&M executed a Transfer Agreement, whereby the Assembly transferred to AGM&M all of its assets held for the development, renovation, and construction of the museum and memorial. (Dkt. No. 26, ¶ 10.) The Transfer Agreement also provided that AGM&M would honor all of the existing donor requirements that the Assembly had agreed to as part of the Grant Agreement, and "agree[d] to comply with [the Assembly's] obligations" under the Grant Agreement. (Dkt. No. 26 Ex. B §§ 1.1-1.4.) Accordingly, AGM&M now holds title to all property donated by, or purchased with the donations of, CFF and Mr. Cafesjian, and all of the obligations attached to those properties—including the obligation to "transfer to the Grantor the Grant Property" if it is not developed by December 31, 2010. (*Id.* Ex. A § 3.1(B)(ii).)

**The Present Lawsuit.** The present lawsuit is a minor chapter in a much larger saga between Mr. Cafesjian and Hirair Hovnanian, another trustee of AGM&M who, along with his

allies, has blocked Mr. Cafesjian from moving forward with developing a proper museum and memorial project for several years. Hovnanian's actions—which have culminated in the virtual lockout of CFF and Mr. Cafesjian from participation in the development of the museum and memorial that Mr. Cafesjian almost single-handedly funded—have spawned numerous lawsuits here, and several in the District of Minnesota (which have now all been dismissed or transferred to this Court.) *See supra* p. 2 n.1. The details of those actions, however, are not germane here.

The present suit involves a single action: Mr. Water's execution and recordation, on October 23, 2006, of a Memorandum of Agreement Reserving Rights between CFF and AGM&M, which merely provided notice, on the public record, of the reversionary interest CFF holds over the properties in question. (Dkt. No. 26 Ex. E.) Mr. Waters executed that Memorandum of Agreement in his capacity as an officer in both CFF and AGM&M. (*Id.* at 2.) As Plaintiff acknowledges, Mr. Waters has since resigned as an officer in AGM&M. (Dkt. No. 30-3 at 2.) The amended complaint in this case alleges simply that Mr. Waters did not have the authority to execute and record the Memorandum of Agreement *on behalf of AGM&M*, and the only relief sought is the removal of that Memorandum of Agreement from the land records of the District of Columbia. (Dkt. No. 26 at 7-8.) It does not challenge the propriety of the reversion interest itself, nor does it challenge a party's general statutory right to protect its interests in land by recording interests, on its own behalf. (*See generally id.*)

**CFF's *lis pendens* and Release of the Memorandum of Agreement.** Since the filing of this suit, CFF has satisfied the relief sought in the present lawsuit while protecting its interests through other, indisputably permissible, means. In Case No. 08-cv-00255-CKK, unlike here, the Assembly and AGM&M have asked that the reversionary interest be declared unenforceable, despite the fact that the Assembly knowingly agreed to the reversion interest when it accepted

Mr. Cafesjian's generous donation, and which obligation AGM&M knowingly assumed when signing the Transfer Agreement. In response, CFF has filed a notice of *lis pendens* with respect to the properties, as its interest in those properties is being challenged. (Ex. A.) With the *lis pendens* in place, CFF's reversionary interest is now protected against any attempted sale by AGM&M to a *bona fide* third party purchaser. As such, the Memorandum of Agreement is redundant, and CFF and Waters have filed with the District of Columbia Recorder of Deeds a release of record with respect to the Memorandum of Agreement itself (while reserving the reversionary interest given to CFF in the Grant Agreement.) (Ex. B.)

This action has mooted the present lawsuit. With the release of the Memorandum of Agreement, the relief sought in the amended complaint has been satisfied, and Mr. Waters, having now resigned from AGM&M, cannot sign any more documents on its behalf, be it *ultra vires* or otherwise. As such, there is no longer a live dispute for this Court to resolve.

## ARGUMENT

I. **PLAINTIFF'S REQUESTS FOR RELIEF ARE MOOT.**

    A. **Cases Involving Improper Liens Are Moot Once the Lien is Removed.**

Article III of the Constitution limits federal court jurisdiction to "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). Thus, a court is obligated to consider whether there is an actual, ongoing controversy "through all stages" of the proceedings to ensure that a live controversy remains. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). Thus, "even where litigation poses a live controversy when filed, the doctrine of mootness requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192, 198 (D.C. Cir. 2003) (internal punctuation omitted).

In a case where, as here, the challenged action is "voluntarily discontinued," a matter is moot if "(1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998) (internal quotation marks and citation omitted). Moreover, a request for injunctive relief is moot if the challenged behavior has ceased, as "[p]ast exposure to illegal conduct fails to establish a present controversy meriting injunctive relief without a showing of present adverse effect." *Reeve Aleutian Airways, Inc. v. United States*, 889 F.2d 1139, 1142 (D.C. Cir. 1989). Likewise, when the challenged action has ceased, declaratory relief is unavailable for the purpose of adjudicating whether that prior activity was improper or illegal. *See Larsen v. United States Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (noting that "order declaring [ceased conduct was] illegal would accomplish nothing—amounting to exactly the type of advisory opinion that Article III prohibits.")

Taken together, these principles demonstrate that when a plaintiff challenges the propriety of a lien, but the lien is removed during the pending litigation, there is no live case or controversy warranting substantive, declaratory, or injunctive relief. The case of *Johansen v. United States*, 506 F.3d 65 (1st Cir. 2007) is instructive. There, a woman filed suit challenging the government's right to place a tax lien on her property following her ex-husband's failure to pay taxes. *Id.* at 66. During the proceedings, however, her husband paid the back taxes and the lien was removed. *Id.* at 67. The Government suggested that the case was thus moot, and the First Circuit agreed. The Court noted that "the desired modification of behavior underlying the plaintiff's complaint, the removal of the defendant's lien on the subject property, has already been accomplished. Any further judicial pronouncements would be without real value." *Id.* at 69 (internal quotation marks omitted). Thus, because a declaration as to the propriety of the

withdrawn lien could no longer "affect[] the behavior of the defendant towards the plaintiff," such a decree would amount to an advisory opinion. *Id.* As such, there was no live case or controversy, and the case was moot. *Id.* at 70-71; *see also Ponzar v. Whitmoor Country Club*, 114 S.W.3d 336, 338 (Mo. App. 2003) ("Count I of Homeowners' amended petition was to remove a lien. Since Homeowners . . . have taken all the steps necessary for the removal of the lien from the property [the] Homeowners' claim is moot.").

      **B.**     **Defendants' Withdrawal of the Memorandum of Agreement From the Land Records of the Properties at Issue Moot this Case.**

Based on the aforementioned authorities, Defendants' release of the Memorandum of Agreement from the District of Columbia's land records moots this controversy. Plaintiff's amended complaint seeks three avenues of relief: (1) "removal of the Memorandum from the land records of the District of Columbia," (2) a "declaration by this Court that the execution of the Memorandum . . . were not duly and properly authorized" and thus "are . . . of no force and effect," and (3) an "injunction requiring Defendants to cooperate . . . with [AGM&M] in taking all actions . . . to effect the removal of the Memorandum from the land records of the District of Columbia." (Dkt. No. 26, at 7-8.) Each ground for relief is now moot.

As to the substantive relief requested—that the Memorandum of Agreement be removed from the land records—that request has been realized in full. Given that the recordation of the Memorandum of Agreement was the only harm alleged, the violation has been eradicated by Defendants' release of record, and the Plaintiff's claim is moot. *See Motor & Equip.*, 142 F.3d at 459; *see also Johansen*, 506 F.3d at 71; *Ponzar*, 114 S.W.3d at 338. Moreover, there can be no "reasonable expectation that the conduct will recur" as Mr. Waters resigned from his duties as AGM&M's Secretary/Treasurer nearly 2 years ago. As such, he no longer has the ability to

execute and record documents on behalf of AGM&M, *ultra vires* or otherwise, and thus the complained-about action cannot be repeated. *See Motor & Equip.*, 142 F.3d at 459.

As to the declaratory relief requested—that Mr. Waters' execution and recordation of the Memorandum of Agreement be declared an *ultra vires* act—it is clear that such relief is now inappropriate. Given that the Memorandum of Agreement has now been released, circuit law is clear that any declaratory order now would "accomplish nothing" and "amount[] to exactly the type of advisory opinion Article III prohibits." *Larsen*, 525 F.3d at 4. Indeed, as in *Johansen*, the "desired modification of behavior underlying the plaintiff's complaint, the removal of the [Memorandum of Agreement] on the subject property has already been accomplished," means that any "further judicial pronouncements would be without real value." 506 F.3d at 69 (internal punctuation omitted.) Simply put, whether or not Mr. Waters acted properly with respect to recording the Memorandum of Agreement is no longer relevant or worthy of judicial review.[2]

Finally, as to the injunctive relief requested—that Defendants be ordered to assist Plaintiff in removing the Memorandum of Agreement from the land records—that request has also been fully satisfied. There is clearly no need for injunctive relief to force Defendants to do what they have already done. This Court can no longer provide relief on these grounds, rendering the claim for relief moot. *Reeve Aleutian Airways, Inc.*, 889 F.2d at 1142. Thus, with all three grounds for relief moot, there is no justiciable case or controversy before the Court and the case should be dismissed for lack of jurisdiction.

## II.     NO EXCEPTIONS TO MOOTNESS DOCTRINE APPLY IN THIS MATTER.

Although AGM&M has received the relief it sought, it may still try to contest that this matter is now moot. No exception to the mootness doctrine, however, is applicable here.

---

[2] Likewise, Defendants' counterclaim—that this Court declare that AGM&M had no authority to bring this action, is moot for the same reason.

The primary exception to mootness is for cases that are "capable of repetition, yet evading review." *Spencer v. Kemna,* 523 U.S. 1, 17 (1998).[3] This exception applies if: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Southern Co. Servs., Inc. v. FERC*, 416 F.3d 39, 43 (D.C. Cir. 2005). The party opposing mootness has the burden of showing that the requirements are met. *See Public Utils. Comm'n v. FERC,* 236 F.3d 708, 714 (D.C. Cir. 2001).

Here, neither prong of this exception can reasonably be met. First, a dispute over the recordation of a land interest is not "too short to be fully litigated," given that once a land interest is recorded, it remains on record indefinitely in order to provide notice of that interest to future purchasers. *See, e.g., Smart v. Nevins*, 298 A.2d 217, 219 (D.C. 1972). For this reason alone, the "capable of repetition, yet evading review" exception does not apply. *See Hall v. C.I.A.*, 437 F.3d 94, 99 (D.C. Cir. 2006) (declining to allow exception because issues were not "inherently of such short duration that they cannot ordinarily be fully litigated before their cessation").

*Second*, as described in Part I.B, *supra*, there can be no "reasonable expectation" that Plaintiff will be subject to the same action again. Mr. Waters is no longer an AGM&M officer and thus no longer has the capacity to execute and record documents on AGM&M's behalf. Further, given that CFF has other means of protecting its interests against potential third-party purchasers of the land, including through *lis pendens*, and given that the Grant Agreement and Transfer Agreement create the reversionary interest which CFF is entitled to give notice of, *see* D.C. Code § 42-409, there would be no reason for Waters to execute and record another

---

[3] The other exception—for certain situations in which the defendant voluntary ceases the challenged conduct—was addressed in Part I, *supra*.

Memorandum of Agreement on AGM&M's behalf. Plaintiff cannot establish this exception to mootness, and thus this case should be dismissed.

## CONCLUSION AND REQUEST FOR ORAL ARGUMENT

The Memorandum of Agreement Reserving Rights, which is the object of this lawsuit, has now been released. As such, this matter is moot. The Court should dismiss the matter for lack of subject matter jurisdiction. Defendants hereby request oral argument on this motion.

Dated: July 17, 2008

Respectfully submitted,

/s/ Thomas F. Cullen, Jr._____
Thomas F. Cullen (D.C. Bar No. 224733)
Nancy Berardinelli-Krantz (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
nbkrantz@jonesday.com

*Counsel for Defendants The Cafesjian Family Foundation, Inc. and John J. Waters, Jr.*

# EXHIBIT A



# NOTICE OF PENDENCY OF ACTION
## (LIS PENDENS)

Notice is hereby filed pursuant to D.C. Code §42-1207 (2001 ed.) of the pendency of an action in the United States District Court for the District of Columbia affecting title to the property referenced below:

| | |
|---|---|
| Court: | United States District Court for the District of Columbia |
| Title of Action: | The Armenian Assembly of America, Inc., and the Armenian Genocide Museum and Memorial, Inc. v. Gerard L. Cafesjian, individually and as Trustee and President of the Armenian Genocide Museum and Memorial, Inc. and President and Director of the Cafesjian Family Foundation, Inc.; John J. Waters, Jr., individually and as Secretary/Treasurer of the Armenian Genocide Museum and Memorial, Inc., President of the TomKat Limited Partnership, and Secretary and Director of the Cafesjian Family Foundation, Inc.; The Cafesjian Family Foundation, Inc.; and the TomKat Limited Partnership |
| Docket Number: | Civil File No. 1:08-00255 (CKK) |
| Filing Date: | February 15, 2008 |
| Object of Filing: | Quiet Title (Declaratory Judgment); Declaratory Judgment; Damages; and Injunctive Relief |
| Relief Sought: | Declaratory Judgment regarding Gerard L. Cafesjian's and the Cafesjian Family Foundation's Reversionary Interest in the properties described herein; Injunctive Relief regarding Gerard L. Cafesjian's and the Cafesjian Family Foundation's Reversionary Interest in the properties described herein; Additional Declaratory and Injunctive Relief; and Unspecified Damages |
| Person whose estate is to be affected: | TomKat Limited Partnership; Gerard L. Cafesjian; The Cafesjian Family Foundation, Inc.; the Armenian Genocide Museum and Memorial, Inc.; and any and all persons having or claiming to have an interest in and to the properties described herein |

THIS IS TO CERTIFY THAT THIS IS A TRUE COPY

JUN 26 2008

Recorder of Deeds, D.C.

1 of 3

Description of Properties:

### 1) Legal Description of the Property located at 1334-36 G Street NW, District of Columbia, Property # 0253 0817 and 0253 0818:

All that certain lot or parcel of land together with all improvements thereon located and being in the City of Washington in the District of Columbia as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 194 at Folio 74 and being more particularly described as follows:

Part of Original Lot numbered Seventeen (17) in Square numbered Two Hundred Fifty-Three (253), described as follows: BEGINNING at the Northwest corner of said lot; thence East on the South line of "G" Street, 36.90 feet; thence South 113 feet 8 ½ inches to a 30 foot alley; thence West on the North line of said alley 36.90 feet; thence North 113 feet 8 ½ inches to the place of beginning.

### 2) Legal Description of the Property located at 1342 G Street NW, District of Columbia, Property #: 0253 0053:

Lot numbered Fifty-Three (53) in Harry Wardman and Thomas P. Bones' subdivision of lots in Square numbered Two Hundred and Fifty-Three (253) as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 64 at Folio 46.

### 3) Legal Description of the Property located at 1340 G Street NW, District of Columbia, Property # 0253 0054:

Lot Numbered Fifty-Four (54) in Harry Wardman and Thomas P. Bones' subdivision of lots in Square Two Hundred Fifty-Three (253) as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 64 at Folio 46.

### 4) Legal Description of the Property located at 1338 G Street NW, District of Columbia, Property #: 0253 0055:

Lot numbered Fifty-Five (55) in Harry Wardman and Thomas P. Bones' subdivision of lots in Square numbered Two Hundred and Fifty-Three (253) as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 64 at Folio 46.

Description of Properties (continued):

**5) Legal Description of the Property located at 619 14th Street NW, District of Columbia, Property #: 0253 0067:**

Lot numbered Sixty-Seven (67), in Square numbered Two-Hundred Fifty-Three (253), in subdivision made by "619 14th Street Limited Partnership," as per plat recorded in Liber 191 at Folio 165 of the Records of the Officer of the Surveyor for the District of Columbia.

Being all the same property as contained in that deed dated February 1, 1993 and recorded February 8, 1993 as Instrument No. 9490, wherein the property was known for assessment and taxation purposes as Lots 833 and 45 in Square 253.

Dated: June 25, 2008

For Further Information Contact:

*[signature]*

Thomas F. Cullen, Jr.
51 Louisiana Avenue N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: tfcullen@jonesday.com

Counsel for Defendant

Subscribed and sworn to or affirmed
before me this 25th day of June, 2008.

*[signature]*
Notary Public

My commission expires  11/14/11

Doc# 2008069222 Fees:$42.50
06/26/2008   11:49AM Pages 3
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

AFTER RECORDING,
PLEASE RETURN TO:
Thomas F. Cullen, Jr.
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

RECORDING
SURCHARGE          $   27.00
COPIES             $    6.50
CERTIFICATION      $    6.75
                   $    2.25

# EXHIBIT B



Please record and return to:

Thomas F. Cullen, Jr., Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001



## RELEASE OF MEMORANDUM OF AGREEMENT RESERVING RIGHTS

THIS RELEASE OF MEMORANDUM OF AGREEMENT RESERVING RIGHTS (the "Release") is made as of the 11th day of July, 2008, by The Cafesjian Family Foundation, Inc., a Florida Nonprofit Corporation ("CFF").

### WITNESSETH

WHEREAS, CFF is a beneficiary under that certain Memorandum of Agreement Reserving Rights (the "Memorandum"), dated October 23, 2006, made by the Armenian Genocide Museum and Memorial, Inc., a District of Columbia Nonprofit Corporation and CFF, recorded with the District of Columbia Recorder of Deeds as document number 2006146263; and

WHEREAS, the Memorandum recorded the existence of a Letter Agreement dated November 1, 2003 (the "Letter Agreement"), a Transfer Agreement dated November 1, 2003 (the "Transfer Agreement") and CFF's reversionary interest contained therein; and

NOW, THEREFORE, CFF declares as follows:

1. As a beneficiary, CFF hereby releases the Memorandum as it pertains to the properties described in Exhibit A.

2. This Release is for recording purposes only and shall not be construed to alter, modify, limit, amend, or supplement the Transfer Agreement, the Letter Agreement or the reversionary interest CFF holds in the properties described in Exhibit A.



IN WITNESS WHEREOF, CFF intending to be legally bound hereby, has caused this Release to be signed by Gerard L. Cafesjian, its President, and attested by John J. Waters, Jr., its Secretary/Treasurer.

ATTEST:

**CAFESJIAN FAMILY FOUNDATION, INC.**
A Florida Nonprofit Corporation

By: _____
John J. Waters, Jr.              Gerard L. Cafesjian
Secretary/Treasurer              President

STATE OF  Minnesota       }
                                                 } ss:
COUNTY/CITY OF  Hennepin  }

I, the undersigned, a Notary Public in and for the aforesaid jurisdiction, DO HEREBY CERTIFY that Gerard L. Cafesjian, President of Cafesjian Family Foundation, Inc., who is personally well known (or satisfactorily proven) to me as party to and who executed the annexed Release of Memorandum bearing date the 11th day of July, 2008, personally appeared before me in the aforesaid jurisdiction and acknowledged the same to be his act and deed on behalf of the corporation.

Witness my hand and official seal this  11  day of July, 2008.

_____
Notary Public

My commission expires  Jan 31, 2009
[Notarial Seal]



THOMAS P. SHANNON
Notary Public-Minnesota
My Commission Expires Jan 31, 2009

EXHIBIT A

**1) Legal Description of the Property located at 1334-36 G Street NW, District of Columbia, Square: 0253 Lot: 0817 and Square: 0253 Lot: 0818:**

All that certain lot or parcel of land together with all improvements thereon located and being in the City of Washington in the District of Columbia as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 194 at Folio 74. and being more particularly described as follows:

Part of Original Lot numbered Seventeen (17) in Square numbered Two Hundred Fifty-Three (253), described as follows: BEGINNING at the Northwest corner of said lot; thence East on the South line of "G" Street, 36.90 feet; thence South 113 feet 8 ½ inches to a 30 foot alley; thence West on the North line of said alley 36.90 feet; thence North 113 feet 8 ½ inches to the place of beginning.

**2) Legal Description of the Property located at 1342 G Street NW, District of Columbia, Square: 0253 Lot: 0053:**

Lot numbered Fifty-Three (53) in Harry Wardman and Thomas P. Bones' subdivision of lots in Square numbered Two Hundred and Fifty-Three (253) as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 64 at Folio 46.

**3) Legal Description of the Property located at 1340 G Street NW, District of Columbia, Square: 0253 Lot: 0054:**

Lot Numbered Fifty-Four (54) in Harry Wardman and Thomas P. Bones' subdivision of lots in Square Two Hundred Fifty-Three (253) as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 64 at Folio 46.

**4) Legal Description of the Property located at 1338 G Street NW, District of Columbia, Square: 0253 Lot: 0055:**

Lot numbered Fifty-Five (55) in Harry Wardman and Thomas P. Bones' subdivision of lots in Square numbered Two Hundred and Fifty-Three (253) as per plat recorded in the Office of the Surveyor for the District of Columbia in Liber 64 at Folio 46.

**5) Legal Description of the Property located at 619 14th Street NW, District of Columbia, Square: 0253 Lot: 0067:**

Lot numbered Sixty-Seven (67), in Square numbered Two Hundred Fifty-Three (253), in subdivision made by "619 14th Street Limited Partnership," as per plat recorded in Liber 191 at Folio 165 of the Records of the Officer of the Surveyor for the District of Columbia.

Being all the same property as contained in that deed dated February 1, 1993 and recorded February 8, 1993 as Instrument No. 9490, wherein the property was known for assessment and taxation purposes as Lots 833 and 45 in Square 253.

Doc# 2008077133 Fees:$42.50
07/16/2008  2:43PM Pages 3
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

3 of 3

RECORDING            $   27.00
SURCHARGE            $    6.50
COPIES               $    6.75
CERTIFICATION        $    2.25

*Marquis Ellis*

THIS IS TO CERTIFY THAT THIS IS A TRUE COPY

*Larry A. Todd*

Recorder of Deeds, D.C.

JUL 16 2008