UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| The Armenian Genocide Museum and Memorial, Inc.<br><br>            Plaintiff,<br><br>v.<br><br>The Cafesjian Family Foundation, Inc., and John J. Waters, Jr.<br><br>            Defendants. | Civil File No. 1:07-cv-01259 (CKK)<br>**Status Hearing: November 3, 2008 (9:00 a.m.)** |

**OPPOSITION TO DEFENDANTS' SUGGESTION OF MOOTNESS**

Plaintiff, the Armenian Genocide Museum and Memorial, Inc. ("AGM&M"), through its counsel, hereby submits this Opposition to Defendants' Suggestion of Mootness, as well as Defendants' request for dismissal of this action set forth therein. As discussed below, because actual, ongoing controversies continue to exist between the Parties, dismissal of this action on grounds of mootness is not warranted. Defendants' own pleadings confirm that Defendants continue to assert that they have a reversionary interest in the Properties that are the subject of this action, which assertion is the precise cause of Plaintiff's original action. Moreover, as Defendants have simply substituted a new cloud on the AGM&M's title to the Properties for another via the filing of the *Lis Pendens*, and have done so only after wrongfully refusing to remove the original unauthorized and *ultra vires* cloud on the AGM&M's title to the Properties, causing over a year of costly litigation, adverse effects continue from the Defendants' conduct. Accordingly, continued jurisdiction over the case is necessary to ensure that the disputes between the Parties are fully and finally resolved.

SF-158601 v3

**I.     Factual and Procedural Background**[1]

AGM&M, a non-profit organization created to build, manage, and maintain a museum to commemorate and educate the public regarding the Armenian Genocide, initiated the instant action seeking to quiet title to five parcels of real property located in the District of Columbia that the AGM&M acquired for the purpose of building the museum ("Properties"). While purporting to serve as an officer of the AGM&M, Defendant John J. Waters Jr. ("Waters Jr.") unilaterally executed and then recorded, purportedly on behalf of both CFF and the AGM&M, a document (hereinafter referred to as the "Memorandum of Agreement Reserving Rights" or "Memorandum") with the District of Columbia Recorder of Deeds that purported to reserve certain rights in the Properties, thereby creating a cloud on the title to the Properties.

It is apparent from the circumstances surrounding the execution of the Memorandum that Defendants' actions were calculated to thwart progress on the museum, thereby increasing the likelihood that Defendant Cafesjian Family Foundation ("CFF") and its President (proposed Defendant) Gerard L. Cafesjian ("Cafesjian"), would unjustly benefit by their involvement in the project. As has been previously noted, the museum project originally was a concept of the Armenian Assembly of America, Inc. ("the Assembly"), the premier Armenian-American advocacy group in the United States. When they determined that the AGM&M would be formed to assume responsibility for the project, the Assembly and Cafesjian entered into a Grant Agreement in order to set forth the manner and terms under which Cafesjian would donate certain funds to the AGM&M, including funds to purchase the Properties, and the terms under which the Assembly would donate its previously acquired funds and assets to the AGM&M. Pursuant to the Grant Agreement, Defendant CFF agreed to grant the Assembly funds to be used

---

[1] As the complete factual history has been extensively detailed in previous filings, an abbreviated history of the most relevant facts is set forth herein.

to purchase the Properties from another Cafesjian-owned entity, The TomKat Limited Partnership ("TomKat"),[2] which in turn were to be transferred to the AGM&M by the Assembly.

Under the terms of the Grant Agreement, there is a provision regarding the "Grant Property" donated by CFF and Cafesjian, which provides as follows:

> (B) If the Grant Property is not developed prior to December 31, 2010 in accordance with [Plans to be approved by the AGM&M Board of Trustees], or if the Grant Property is not developed in substantial compliance with the Plans including with respect to the deadlines for completion of the construction, renovation, installation and other phases detailed in the Plans, then:
>
> i. in the event any portion of the Grants has not been funded, this Agreement terminates; and
>
> ii. to the degree any portion of the Grants has been funded, at the Grantor's sole discretion, the Assembly shall return to the Grantor the Grant funds or transfer to the Grantor the Grant property.

This is the provision referenced in the Memorandum which was the initial subject of this action.

Unfortunately, and in direct violation of their duty of good faith and fair dealing with respect to the Grant Agreement, as well as their fiduciary duty to AGM&M, Defendants have engaged in a campaign of misdeeds and costly litigation in an effort to wrongfully profit from the alleged reversionary clause by deliberately delaying the museum project. As described in Plaintiff's original, First Amended, and proposed Second Amended Complaints, after failing to properly manage the AGM&M for a period of three years, Defendants secretly filed the *ultra vires* Memorandum which clouded title to the Properties. When the filing of the Memorandum was discovered and Defendants were requested to remove the cloud on the titles to the properties

---

[2] Prior to AGM&M's formation, the Assembly purchased a desirable site for the museum at the former National Bank building. Cafesjian subsequently acquired the properties adjacent to the National Bank site for his own purposes (he intended to build a "Cafesjian" art museum) but, after that project fell through, Cafesjian decided to arrange for the transfer of the properties to the newly formed AGM&M, an entity he apparently hoped to control.

they had created, Defendants refused.  Accordingly, on June 7, 2007, AGM&M initiated this action by filing a complaint ("Complaint") against CFF in the Superior Court for the District of Columbia, which Complaint asserted that CFF had, through the actions of its officer, Waters Jr., improperly clouded title to the Properties through the filing of the Memorandum.  On July 16, 2007, CFF filed a Notice of Removal, thereby transferring the case to the United States District Court for the District of Columbia.  On July 20, 2007, CFF filed its Answer and Counterclaims to the Complaint.  On August 9, 2007, AGM&M filed its Answer to the Counterclaims.

On March 12, 2008, pursuant to leave of court, AGM&M filed its First Amended Complaint, which added Waters Jr. as a defendant in this action, in his individual capacity and in his capacity as an officer of CFF and former officer and current Trustee of AGM&M.  On March 24, 2008, CFF filed its Answer and Counterclaim to the First Amended Complaint.  On April 11, 2008, AGM&M filed its Answer to the Counterclaim.

The parties conducted discovery throughout the spring of 2008, through which process Waters Jr. admitted, via sworn Answers to Interrogatories, that he had never received authorization to record the Memorandum from the Board of Trustees of AGM&M, and that his father, John J. Waters, Sr. ("Waters Sr.") who ostensibly was the attorney for TomKat, had also acted as an attorney for AGM&M during the initial acquisition of the Properties, and had in fact provided advice to Waters Jr. regarding the filing of the Memorandum in conflict with his duties as attorney to AGM&M. As a result of this disclosure, AGM&M filed a Motion for Summary Judgment in an effort to bring the case to an expeditious conclusion.  Defendants strenuously

opposed the filing of the Motion for Summary Judgment, and the Court denied the Motion without prejudice.[3]

On June 26, 2008, the Parties filed a Joint Motion to extend the discovery schedule in order to permit Defendants' new counsel additional time to familiarize themselves with the case. The Joint Motion was allowed via a July 3, 2008 Minute Order from this Court.

On June 26, 2008, the same day Defendants agreed to file the Joint Motion in this case and without notice to AGM&M that they had done so, Defendants filed a *Lis Pendens* pertaining to the Properties that are the subject matter of this action.  On July 16, 2008, Defendants filed a release of the Memorandum, again without any notice to AGM&M, essentially conceding that the Memorandum which precipitated the instant action lacked any valid legal basis.  On July 17, 2008, Defendants filed a Suggestion of Mootness that includes a request to dismiss this action. On July 23, 2008, AGM&M filed a proposed Second Amended Complaint and a Motion to Amend.  The new Complaint clarified that, despite the release of the Memorandum, a dispute between the parties continues to exist, as the Defendants' latest actions and the information discovered during the course of discovery confirm Defendants' breaches of fiduciary duty, and as the relief sought by AGM&M, including clear title to the Properties and resolution of the alleged reversionary interest in the Properties, continue to be necessary so as to permit AGM&M to expeditiously proceed with the construction of the museum.

## II.     Legal Argument

AGM&M opposes the Suggestion of Mootness, and the request for dismissal of this action set forth therein, as this action continues to present live controversies which require

---

[3] The Court determined that it would not consider the Motion for Summary Judgment until further discovery had been completed and a Status Conference in this matter had been conducted.

determination by this Court. First, as set forth in AGM&M's proposed Second Amended Complaint, there are numerous live claims arising out of the transactions which gave rise to this case, including claims which were developed during the course of discovery in this matter. Second, the claims and requests for relief contained in the First Amended Complaint continue to require resolution, as Defendants continue to assert that they have a current interest in the Properties and have, in fact, simply substituted one cloud on the title to the Properties for another. As AGM&M disputes Defendants' assertion that Defendants are entitled to benefit from the alleged reversionary clause, AGM&M's original request to have this Court address the status of the title to the Properties is still justiciable. Finally, the removal of the Memorandum confirms that Defendants' litigation of this action over the past year and a half was conducted in bad faith and for the sole purpose of causing delay and obstruction to the museum project. Accordingly, if, for some reason, the Court allows Defendants' request for dismissal of this action, Plaintiff hereby requests that AGM&M be awarded attorneys fees and costs incurred during this action, as well as damages incurred as a result of the filing of the Memorandum.

    A.    <u>The Claims Set Forth in Plaintiff's Second Amended Complaint Present a Live, Justiciable Controversy</u>

As noted above, on July 23, 2008, AGM&M filed a proposed Second Amended Complaint along with a Motion to Amend. The proposed Second Amended Complaint seeks to add Cafesjian and Waters Sr. as parties, asserts claims for breach of fiduciary duty against both as well as Waters Jr., and requests that the Court quiet title to the Properties, remove the *Lis Pendens*, and enjoin Defendants from taking further action which will cloud title to the Properties, thereby causing delay to the museum project and, potentially, permitting Defendants to wrongfully profit from the reversionary clause. In support of the quiet title request, the proposed Second Amended Complaint also seeks to have this Court declare the reversionary

clause of the Grant Agreement unenforceable in light of Defendants' efforts to thwart development of the museum via clouds on the Plaintiff's title and costly litigation. Finally, the proposed Second Amended Complaint requests that the Court award AGM&M damages (including attorneys' fees and costs) incurred as a result of the filing of the Memorandum and the litigation that such filing has precipitated. These claims are asserted in good faith and arise out of new misdeeds by the Defendants during the course of these proceedings (including vexatious litigation and other tactics which have substantially increased the damages incurred by AGM&M) as well as information revealed during the course of discovery. As each of these claims present a live, justiciable controversy, Defendants' Suggestion of Mootness and request for dismissal should be denied.

> B.  As Defendants Continue to Assert an Interest in the Properties, and Have Simply Substituted a New Cloud on Title for their Previously Filed Cloud on Title, this Action is Not Moot

"To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). "A dispute may be mooted when the allegedly illegal conduct at issue has been voluntarily discontinued if (1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Motor and Equip. Mfrs. Ass'n. v. Nichols, 142 F.3d 449, 459 (D.C. Cir. 1998)(emphasis supplied). "The burden of establishing mootness rests on the party that raises the issue . . . [and] is a 'heavy' burden." Id.

Here, the Defendants cannot meet their heavy burden to establish that no continuing justiciable controversy exists between the Parties, as the AGM&M has suffered, and continues to suffer, an injury as a result of Defendants' continuing efforts to cloud title to the Properties that

are the subject of this dispute. Defendants' *ultra vires* and deceptive filing of the Memorandum as well as Defendants' refusal, despite over a year of litigation, to release the cloud on title caused by the Memorandum, have caused injury to AGM&M by delaying the museum's progress and precipitating the instant, costly litigation. The fact that the cloud on title has subsequently been removed does not ameliorate the "present adverse effect" of the Defendants' actions and the effects of the Defendants' actions have "not been completely and irrevocably eradicated," see Reeve Aleutian Airways, Inc. v. United States, 889 F.2d 1139, 1142 (D.C. Cir. 1989), as the effect of the Memorandum has been to delay the development of the museum, cost the AGM&M time and expense, and thereby bring the Defendants that much closer to forcing the application of the alleged reversionary clause. See id.

Indeed, Defendants continue to assert, in their Pleadings, that "the Grant Agreement and Transfer Agreement create [a] reversionary interest" by Defendants in the Properties. See Suggestion of Mootness at 9. This assertion, and Defendants' filing of the *Lis Pendens*, are precisely the reason that AGM&M sought a declaration from this Court that clears "the cloud on Plaintiff's title to the Properties." See First Amended Complaint at 7 ("Prayers for Relief"). The Grant Agreement which Defendants allege creates a reversionary interest in the Properties is between Defendants and the Armenian Assembly of America, Inc., not AGM&M, the entity that actually holds title to the Properties. The fact that Defendants have substituted one cloud on title for another does not remove the controversy between the parties regarding the status of AGM&M's title to the Properties, nor does it address Defendants' pattern of bad faith litigation, which seeks to repeatedly substitute one frivolous claim or controversy for another in order to thwart the AGM&M's progress in actually developing the museum, and in order to avoid an actual inquiry into the substance of their underlying claims, which claims could not survive a

determination on the merits.[4]  Accordingly, Defendant's request for dismissal on mootness grounds must be denied.

        C.      <u>Plaintiff Should Be Awarded Fees, Costs, and Other Damages Incurred as Result of Defendant's Filing of the Memorandum</u>

Even if the Court were to entertain Defendants' request for dismissal, the Court cannot, as a matter of equity, permit the Defendants to escape the consequences of their bad faith refusal to remove the cloud caused by the Memorandum until over a year of litigation had passed.  As discussed above, the Defendants were requested to remove the cloud on title to the property, and were advised that the filing of the cloud on title constituted a breach of their fiduciary duty, well over a year ago, during the winter and again in the spring of 2007.  Despite these repeated requests, Defendants refused to remove the cloud on title.  Accordingly, AGM&M was required to initiate the instant action to address the cloud on its title.  What followed was over a year of costly litigation, as well as increased costs pertaining to the insurance and development of the museum caused by the presence of the Memorandum.   Defendants strenuously opposed any efforts to remove the Memorandum, asserted frivolous Counterclaims against Plaintiff,[5] and engaged in extensive discovery with AGM&M.

Now, Defendants ask the Court to ignore the consequences of their unreasonable and vexatious conduct by unilaterally removing the cloud on title and seeking to have the case dismissed.  Indeed, it seems clear that Defendants came to the conclusion that the execution and filing of the Memorandum was indefensible as a matter of law, and simply hope to avoid the

---

[4] If Defendants were simply seeking to protect their alleged interests, the Defendants have other options besides clouding title to the Properties, including seeking pretrial security in one of the other currently pending cases that they have spawned.

[5] Defendants asserted similar (and equally frivolous) breach of fiduciary duty claims against AGM&M in a separate action (Docket No. 07-1746).  As in this case, they are now seeking to dismiss these claims via a belated Motion to Amend.

consequences of their actions.[6]  Through discovery, Waters Jr. confirmed that the execution and filing of the Memorandum was never duly authorized, and that, accordingly, the Memorandum lacked a valid legal basis.  The only explanation for the Defendants' insistence on proceeding with this case for over a year is that Defendants hoped to cost the AGM&M time and money and to delay progress on the museum in order to wrongfully benefit from the alleged reversionary clause.   In light of the apparent damages caused to the AGM&M by Defendants' actions, if the Court elects to dismiss the action, the Court should award attorneys' fees, costs, and other damages to AGM&M.  See Roadway Express v. Piper, 447 U.S. 752, 766 (1980)(fees may be awarded against a party who has acted in bad faith); Swedish Hosp. Corp. v. Shalala, 845 F. Supp. 894, 897 (D.D.C. 1993)(awards are permitted against a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, noting that "[c]onduct giving rise to litigation may be found in bad faith where a party, confronted with a clear . . . duty towards another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights.")(internal quotations omitted).

> WHEREFORE, AGM&M respectfully requests that this Court deny the Defendants' request for dismissal on mootness grounds or, in the event that the Court grants Defendants' request for dismissal, that the Court award AGM&M damages (including fees and costs incurred).

---

[6] Defendants' assertion that they did not have the avenue of a *Lis Pendens* prior to July of 2008 is specious.  The action upon which the *Lis Pendens* is premised, Docket No. 08-255, was filed by AGM&M and the Assembly nearly six months ago, in February 2008.  Nevertheless, Defendants waited until months of discovery and litigation had passed in this action before seeking to release the cloud on title.  Such undue delay constitutes more than sufficient ground to award attorneys fees and costs to AGM&M in this action.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  July 28, 2008 | **K&L GATES LLP** |

By:   /s/ David T. Case
      David T. Case (D.C. Bar No. 384062)
      Bruce H. Nielson (D.C. Bar No. 414440)
      1601 K Street, N.W.
      Washington, D.C. 20006
      Tel:  (202) 778-9000
      Fax:  (202) 778-9100

      AND

       /s/ Arnold R. Rosenfeld
      Arnold R. Rosenfeld (MA Bar No. 428860)
      Naoka E. Carey (MA Bar No. 655312)
      One Lincoln Street
      Boston, MA 02111
      Tel: (617) 261-3155
      Fax: (617) 261-3175

      **COUNSEL FOR PLAINTIFF**