**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| The Armenian Genocide Museum and Memorial, Inc., <br><br>     *Plaintiff*, <br><br>           v. <br><br> The Cafesjian Family Foundation, Inc.; and John J. Waters, Jr., <br><br>     *Defendants*. | Civil File No. 1:07-cv-01259 (CKK) <br><br> **ORAL ARGUMENT <br> REQUESTED** <br><br><br><br> Status hearing: August 27, 2008 <br> (10:30 AM) |

**DEFENDANTS' REPLY IN SUPPORT OF SUGGESTION OF MOOTNESS**

As described in Defendants' Suggestion of Mootness, the First Amended Complaint involved only one, ultimately procedural issue—whether John J. Waters, Jr. had the authority to execute and record a Memorandum of Agreement on behalf of The Armenian Genocide Museum and Memorial, Inc. ("AGM&M")—a document which merely provided public notice of The Cafesjian Family Foundation, Inc.'s ("CFF") reversionary interest in five AGM&M properties. (Dkt. No. 37 at 4, 7.)  Now that CFF has released the Memorandum of Agreement, the issue is moot.  Despite the wishful thinking in AGM&M's Opposition, this action did not reflect a concession on the merits of Water's actions.  Rather, Defendants decided to give AGM&M the precise relief it sought because, at the end of the day, the propriety of the Memorandum of Agreement is a minor matter that distracts from the real issues at hand, and one that is academic since CFF has now filed a procedurally-proper *lis pendens*.

Specifically, there can be no reasonable dispute that CFF holds a reversionary right in the five AGM&M properties described in the Memorandum of Agreement.  Mr. Cafesjian and CFF

made a nearly $15 million conditional grant to the Armenian Assembly of America ("the

Assembly"), with one of those conditions being that Assembly would "transfer to [CFF] the

Grant Property" if it is not developed in accordance with the Grant Agreement's terms by

December 31, 2010. AGM&M—itself formed specifically to receive the proceeds of this

grant—accepted this conditional reversion when it signed the Transfer Agreement and agreed to

fulfill all of the obligations of the Grant Agreement. (*Id.* at 2-3.) Any "cloud" on the title is one

that Assembly and AGM&M readily agreed to in exchange for Mr. Cafesjian's donation. And

when a party holds an interest in real property, it is allowed to record that interest and thus give

public notice of it, lest it be irrevocably lost through sale to a *bona fide* purchaser. Whether Mr.

Waters' method of providing that notice was proper has always been largely academic, for

AGM&M cannot claim to be damaged by the "cloud" on its title which it agreed to accept.

     Thus, as described in the Suggestion of Mootness, Defendants released the Memorandum

of Agreement, despite its propriety, and instead filed a *lis pendens* in Case No. 08-cv-0255, as it

is entitled to do under D.C. law. With that *lis pendens* in place, the Memorandum of Agreement

became superfluous, and Defendants gave AGM&M the relief that it sought in its complaint by

releasing the Memorandum. AGM&M appears to concede that the relief it had *actually* sought

has been satisfied, yet still opposes mootness based on (1) an amended complaint which adds

entirely *different* claims, save for one that is nothing more than an eleventh-hour attempt to add

damages claims to an already-mooted claim; and (2) a flawed attempt to portray the *lis pendens*

filed in Case No. 08-cv-0255 as a continuation of the harm inflicted by the allegedly *ultra vires*

Memorandum of Agreement. Both grounds, however, are flawed, as is AGM&M's request for

attorney's fees and costs based on nothing more than its erroneous and self-serving speculation.

This Court should simply declare the issue of Mr. Waters' execution and recordation of the

Memorandum of Agreement to be moot, including any alleged damages from that act, and allow the rest of the claims to proceed in the consolidated action.

**I.    AGM&M'S SECOND AMENDED COMPLAINT DOES NOT AFFECT THE CLAIM FOR WHICH THE SUGGESTION OF MOOTNESS WAS FILED, AND CANNOT SEEK DAMAGES FOR THE MOOTED CLAIM.**

As described in the Suggestion of Mootness, the First Amended Complaint contained a single claim, and alleged simply that Mr. Waters did not have the authority to execute and record the Memorandum of Agreement on behalf of AGM&M; the only relief sought was the removal of the Memorandum of Agreement from the land records of the District of Columbia.  (Dkt. No. 26 at 7-8.)  That single claim did not seek damages as a result of the filing of the Memorandum of Agreement, nor did it challenge the propriety of the reversion interest itself or the general statutory right of a party to protect its interests in land by recording such interests, on its own behalf.  (*See generally id.*)  Once the Memorandum of Agreement was released, the relief sought in the First Amended Complaint was fully satisfied, rendering that claim moot.

AGM&M does not dispute that this action mooted their requests for declaratory and injunctive relief sought in the First Amended Complaint.  Instead of being satisfied with receiving its requested procedural relief in this case, and proceeding with its pending substantive claims in Case No. 08-cv-0255, however, AGM&M filed a motion for leave to file a Second Amended Complaint in a transparent attempt to keep the present suit alive.  (Dkt. No. 38.)  Only the first count of this new complaint involves the same parties and issues as the previous complaint; this count seeks damages from Waters' allegedly improper filing of the Memorandum of Agreement.  (Dkt. No. 38-3 ¶ 45.)  In addition to that newfound damages claim, which AGM&M readily admits is an attempt to avoid having the Memorandum of Agreement issue mooted, (Opp. at 6-7), the Second Amended Complaint (1) adds John Waters, Jr.'s father as a defendant; (2) seeks a declaration that the *substantive* reversionary interest is non-enforceable,

despite its already having requested such relief in paragraph 147 of its Complaint in Case No. 08-cv-0255; and (3) seeks to have the *lis pendens* removed in Case No. 08-cv-0255, despite the fact that Defendants have a statutory right to file a *lis pendens* while that case is pending.

At the August 1, 2008 status conference hearing in Case No. 08-cv-0255, Defendants agreed not to oppose leave to amend to add these new claims.  As such, this case, No. 1:07-cv-01259 will continue for the present, as it now includes new and different claims unrelated to the Memorandum of Agreement.  The existing claim from the First Amended Complaint—that Waters improperly executed and recorded the Memorandum of Agreement—remains moot, however, and AGM&M is not entitled to seek damages for that action, despite its newfound request for such damages in the Second Amended Complaint.

Courts have sensibly held that "[a] request for damages . . . will not avoid mootness if it was 'inserted after the complaint was filed in an attempt to breathe life into a moribund dispute.'"  *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) (quoting *McCabe v. Nassau County Med. Ctr.,* 453 F.2d 698, 702 (2d Cir. 1971)).  Indeed, such transparent attempts to avoid mootness are routinely denied in various procedural postures.  *See Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1098 (9th Cir. 2001) (rejecting post-mootness damages claim made "after various representations that it was seeking only declaratory and injunctive relief . . . and at the eleventh hour," and citing several authorities from other jurisdictions in support); *Harris v. City of Houston*, 151 F.3d 186, 190-91 (5th Cir. 1998) (finding that plaintiff "brought this action to enjoin [conduct], and when [that conduct] occurred, the basic underlying dispute between the parties ended, and the case became moot," and rejecting "notion that we may fashion relief not requested below in order to keep a suit viable").

Here, there is little question that the damages claim is an afterthought, filed in an attempt to keep the issue of Waters' execution and recordation of the Memorandum of Agreement alive. AGM&M never sought damages for the filing of the Memorandum until *after* it was released, and thus *after* the controversy had become moot.  AGM&M's opposition to mootness openly rests, in part, on the proposed filing of the damages claim.  (Opp. at 7).  Given this transparent attempt to add a damages claim to an already-moot claim, the damages requested for Waters' execution and recordation of the Memorandum of Agreement should be disallowed.

II.  **DEFENDANTS' "ASSERT[ION] OF AN INTEREST IN THE PROPERTIES," AS REFLECTED IN ITS FILING OF *LIS PENDENS* IN ANOTHER MATTER, HAS NOTHING TO DO WITH THE PRESENT LAWSUIT'S CLAIMS.**

AGM&M also argues that its claim regarding the Memorandum of Agreement is not moot because, prior to releasing the Memorandum of Agreement, Defendants filed a *lis pendens* in Case No. 08-cv-0255, and thus by "substitut[ing] one cloud on title for another [CFF] does not remove the controversy between the parties regarding the status of AGM&M's title to the Properties."  (Opp. at 8-9.)  But AGM&M draws a false analogy.  As discussed in the Suggestion of Mootness, the single claim asserted in the First Amended Complaint did not involve the status of AGM&M's title itself (that is, the reversion applicable to it), but rather the narrow procedural question of whether Mr. Waters improperly gave *notice* of the status of the title.

By contrast, there can be no legitimate question as to the propriety of the *lis pendens* in Case No. 08-cv-0255.  As recently explained by the District of Columbia Court of Appeals, D.C. Code § 42-1207 provides that a party to a pending action which "affect[s] the title to or assert[s] a mortgage, lien, security interest, or other interest in real property situated in the District of Columbia" is "*entitled . . . to file a notice of lis pendens.*"  *Heck v. Adamson*, 941 A.2d 1028, 1029-30 (D.C. 2008) (emphasis added; internal emphasis omitted).  Contrary to AGM&M's assertion that Defendants "have other options [to protect their interests] besides clouding title to

the Properties, including seeking pretrial security," (Opp. at 9 n.4), the *Heck* Court expressly

held that such an "informal, makeshift arrangement . . . is no substitute for the statutory

protection that *lis pendens* is meant to afford plaintiffs." *Heck*, 941 A.2d at 1031.  And, at a

minimum, so long as the party asserting the interest has alleged enough to state a claim for relief,

the *lis pendens* may not be removed by the Court while the matter is pending, *Heck*, 941 A.2d at

1030-31, and the *Heck* court, in fact, stated that "[it] might well be justified in concluding that,

before judgment is rendered in the action or proceeding, the trial court enjoys no authority to

order cancellation of a *lis pendens* notice."  *Id.*

    Here, as described in the Suggestion of Mootness, Mr. Cafesjian and CFF made a

donation which allowed the Assembly to purchase the Bank of Washington building, and later

entered into a Grant Agreement whereby Mr. Cafesjian and CFF pledged additional funds

towards the purchase of four adjacent properties on G Street to be used as part of the museum

and memorial.  (Dkt. No. 37 at 2-3.).  The Grant Agreement contained a clause which provided

that, if the five properties were not developed by December 31, 2010, in accordance with the

Grant Agreement's requirements, that the Assembly would transfer all five properties to CFF.

(*Id.*)  AGM&M then entered into a Transfer Agreement with the Assembly, in which AGM&M

"agree[d] to comply with [the Assembly's] obligations" under the Grant Agreement, including

the conditional obligation to "transfer to [CFF] the Grant Property."  (*Id.*)  AGM&M is seeking

to void CFF's reversionary right as one of its claims in Case No. 08-cv-0255; as such, CFF was

entitled to file a *lis pendens* in that action, as a matter of District law.  *Heck*, 941 A.2d at 1029-30.

    It is readily apparent that CFF's *statutory* entitlement to file a notice of a pending action

affecting its property interests (a pending action which AGM&M initiated) has nothing to do

with the *contractual* right of Waters to file a Memorandum of Agreement on behalf of AGM&M. As such, the *lis pendens* does not affect the mootness of the Memorandum of Agreement claim.

## III.    AGM&M IS NOT ENTITLED TO COSTS, FEES, OR DAMAGES DUE TO THE MOOTING OF THIS SUIT.

AGM&M's final argument is that, even though they have received all of the relief requested in the First Amended Complaint, they should also receive fees, costs, and damages as a result of CFF's release of the Memorandum of Agreement.  (Opp. at 9-10.)  But this request, which is based on both self-serving speculation and a blatant misrepresentation, is flawed both as a matter of law and as a matter of common sense.  The request should be summarily rejected.

As an initial matter, AGM&M is simply not entitled to damages from even a procedurally improper recordation notice a matter of law, because CFF holds a *substantive* reversionary interest in the properties named in the Memorandum of Agreement.  It is the contractual agreement which establishes property rights; recordation is merely a procedural device that provides constructive notice of property rights to third parties.  *See Assocs. Fin. Servs. of Am., Inc. v. District of Columbia*, 689 A.2d 1217, 1222 (D.C. 1997) (holding that lack of recordation does not affect property rights against parties with "actual" or "inquiry" notice); *State Dep't of Transp. & Development v. Jacob*, 483 So. 2d 592, 595-96 (La. 1986) ("[R]ecordation does not purport to be and is not itself the source of rights.  A recorded purchase from the legal owner transfers ownership to the purchaser, not because of the recordation, but because of the purchase.") (internal quotation marks omitted; citing authorities).  Thus, recordation does not add any additional substantive burdens to the affected property; it merely gives notice of the interest to parties who do not already know (*i.e.*, those without actual notice) and who have no reason to suspect (*i.e.*, those without inquiry notice), thus protecting the interest from being lost to a *bona fide* purchaser without knowledge.  *Assocs. Fin. Servs.*, 689 A.2d at 1222.

- 7 -

Thus, as a matter of common sense, a landowner who grants a substantive property interest to another should not be allowed to claim damages from the act of recordation, even if procedurally improper, for the recordation itself imposes no burden for which the landowner is not already obligated.   Numerous courts have reached this conclusion, and thus bar damages claims based on the recordation of then-valid substantive property rights.  *See, e.g., In Re Idella M. Fee Revocable Trust*, 142 S.W.3d 837, 842 (Mo. App. 2004) (rejecting damages for improper recordation, despite Plaintiff's alleged ownership, when "[a]t the time she filed the deed . . . she was a record owner"); *Michigan Nat. Bank & Trust Co. v. Morren*, 487 N.W.2d 784, 786 (Mich. App. 1992) (rejecting damages for recordation of mortgage interest when, "although defendants recorded their mortgage interest after plaintiffs purchased the property, there is no indication in the record that defendants' mortgage lien is invalid in any way."); *Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. App. 1984) (drawing a "distinction . . . between an improper filing in a procedural sense, and a wrongful filing in a substantive sense. Only the latter will support an action for" damages related to a wrongful lien); *cf. Matheson v. Harris*, 572 P.2d 861, 864 (Idaho 1977) (rejecting damages for unilateral recordation of a "notice" describing the existence of signed and accepted contract, even though the contract was held, after the fact, to be invalid.)

These authorities compel the rejection of any damages claim by AGM&M here.  CFF holds a valid reversionary interest in the five properties identified in the Memorandum of Agreement, which AGM&M agreed to honor when it assumed the Assembly's obligations under the Grant Agreement.  Even assuming that the Memorandum of Agreement *itself* was invalid— which it was not—AGM&M cannot claim to be damaged simply because third parties had *notice* of the obligations that AGM&M already owed.  Simply put, AGM&M has no right to damages because it wishes to hide its valid, binding obligations from third parties.

*Second*, AGM&M may not receive costs and fees based simply on CFF's voluntary decision to release the Memorandum of Agreement, as a matter of law.  The District of Columbia, like the rest of the United States, follows the "American Rule" in which the prevailing litigant is "ordinarily not entitled to collect a reasonable attorneys' fee from the loser," absent statutory authorization to the contrary.  *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975); *Jung v. Jung*, 844 A.2d 1099, 1107 (D.C. 2004).  However, in the case of a voluntary cessation of challenged conduct, without any judicial alteration of the parties' relationship (as is the case here), the Supreme Court has made it clear that the benefited party is *not* a "prevailing party" for the purposes of receiving attorneys' fees, even where such fees are authorized by law.  *See Buckhannon Bd. and Care Home, Inc. v. W.V. Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001).  The Court noted that to hold otherwise would create a "disincentive . . . upon a defendant's decision to voluntarily change its conduct, *conduct that may not be illegal*."  *Id.* at 608 (emphasis added).  Moreover, such a rule would inevitably result in a undesirable "second major litigation" requiring a "highly factbound" analysis "of  the defendant's subjective motivations in changing its conduct."  *Id.* at 609.  *A fortiori*, this analysis applies where, as here, no statute awarding fees exists.

*Buckhannon* precludes any award of fees to AGM&M based simply on CFF's release of the Memorandum of Agreement.  As stated in the Suggestion of Mootness, CFF released the Memorandum in an effort to streamline the multiple cases which had been spawned from this controversy, after having protected its interests through the unambiguously proper act of filing a *lis pendens*.  (Dkt. No. 37 at 1-2.)  CFF did *not* release the Memorandum because it concluded that its execution and recordation were improper, contrary to AGM&M's self-serving assertion (Opp. at 9-10).  Nor is AGM&M being honest when it states, without citation, that "[t]hrough

discovery, Waters confirmed that the execution and filing of the Memorandum was never duly

authorized, and that, accordingly, the Memorandum lacked a valid legal basis." (Opp. at 10.)

This statement is a flat-out misrepresentation.  Mr. Waters has not yet been deposed in this

matter, and the only representations made by Waters to AGM&M in the course of discovery thus

far are contained in his Answers to the First Set of Interrogatories.  (Ex. 1.)  Question 6 asks

Waters to describe his "authorization . . . to execute the Memorandum," to which he replied:

> The Memorandum was authorized pursuant to the Unanimous Written
> Consent in Lieu of the Organization Meeting of the Board of Trustees of
> Armenian Genocide Museum and Memorial, Inc., dated October 30, 2003.

(Ex. 1 at 4.)  While AGM&M might dispute the sufficiency of this document, for AGM&M to

tell the Court that Waters "confirmed" that the Memorandum was not authorized, when he

*expressly described* his claimed authorization in his Interrogatory response, represents a stunning

lack of candor to this tribunal.[1]

Defendants have not conceded that Mr. Waters' execution and recordation of the

Memorandum of Agreement were *ultra vires*, but rather assert only that this Court's resolution of

that question, at this point, would amount to an advisory opinion.  But should this Court disagree

and hold that the issue is not moot, CFF will vigorously defend Waters' actions.  Given that there

are no legal grounds to award AGM&M costs and fees, and given that CFF's actions have, in

fact, unquestionably *saved* AGM&M time and expense that it would have incurred otherwise,

there is simply no basis to award AGM&M fees and costs based on the release the Memorandum

of Agreement.

---

[1] This lack of candor is part of a larger, and unfortunate, pattern.  For instance, AGM&M states that the reversion interest in the Grant Agreement only applies to the Assembly and suggests that CFF invented its reversionary interest against AGM&M out of thin air, (Opp. at 8), despite *its own attachment* of the Transfer Agreement to its pleadings here—the plain language of which obligates AGM&M to fulfill all obligations of the Grant Agreement. (*See* Dkt. No. 26 at Ex. B § 1.2.)   It also claims that CFF filed the *lis pendens* "without any notice to AGM&M," when, in fact, CFF's counsel expressly informed AGM&M's attorney Arnold Rosenfeld—on more than one occasion and in writing—that CFF intended to file a *lis pendens*.  (*See* Ex. 2 at ¶ 6.)  Defendants should not be forced to tolerate such misrepresentations going forward.

Perhaps understanding this, AGM&M also makes the baseless, unsubstantiated, and—given its own litigation tactics—ironic claim that Defendants' litigation was in bad faith.  (Opp. at 10.)  As a matter of District law, however, the "bad faith" exception to the American Rule "is reserved for extraordinary cases, and . . . a party alleging that an action has been litigated in bad faith bears a heavy burden of proof."  *Goffe v. Pickard*, 588 A.2d 265, 271 (D.C. 1991) (internal citations and quotation marks omitted); *accord Jung*, 844 A.2d at 1108.  Far from attempting to meet this "heavy burden" with any reasoned argument or factual analysis, AGM&M only offers a sentence or two of conclusory and self-serving rhetoric about Defendants' supposed motivations in defending the Memorandum of Agreement.  (Opp. at 10.)  The request for "bad faith" costs and fees should therefore be summarily rejected.

## CONCLUSION

The single claim found in the Memorandum of Agreement is moot.  AGM&M's attempts to revive that moot claim and seek, for the first time, damages from the recordation of the Memorandum of Agreement should be rejected as a matter of law, as should the baseless allegations that Defendants pay damages, fees, and costs because they took steps to moot this matter.  The Court should declare the issue of the recordation of the Memorandum of Agreement to be moot, deny any attempt for AGM&M to recover damages from the recordation of that document, and permit the consolidated cases to proceed on the substantive issues yet to be decided.

Dated:  August 4, 2008

Respectfully submitted,

/s/  Nancy Berardinelli-Krantz
Thomas F. Cullen (D.C. Bar No. 224733)
Nancy Berardinelli-Krantz (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700
tfcullen@jonesday.com
nbkrantz@jonesday.com

*Counsel for Defendants The Cafesjian Family
Foundation, Inc. and John J. Waters, Jr.*

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Armenian Genocide Museum and Memorial,
Inc.,

                Plaintiff,

        v.

The Cafesjian Family Foundation, Inc. and
John J. Waters,

                Defendants.

Civil File No. 07-1259 (CKK)

**DEFENDANT JOHN J. WATERS, JR.'S
ANSWERS TO
FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO 1:**  Identify all individuals who were involved in preparing the responses to these Interrogatories and all documents that were reviewed in connection with, relied upon or relate to these Interrogatories or your responses to these interrogatories.

**ANSWER:**  John J. Waters, Jr.; counsel for defendants.

**INTERROGATORY NO 2:**  Identify and describe any and all communication you had with AGM&M, CFF, Cafesjian, or any other person or entity regarding the Memorandum, including without limitation the execution and recording of same, including the date of each communication, the individual(s) with whom you had such communication, the form of such communication (e.g., letter, email, phone call, in-person meeting, etc.) and a description of the content of such communication.

**ANSWER:**  Objection – this Interrogatory seeks information protected by the attorney-client and work product privileges.  Subject to and without waiving these objections, Waters and Cafesjian orally communicated with one another regarding the Memorandum on two or three occasions in October 2006.

**INTERROGATORY NO 3:**  Identify and describe any and all communication you had with AGM&M, CFF, Cafesjian, or any other person or entity regarding the Grant Agreement, including the date of each communication, the individual(s) with whom you had such communication, the form of such communication (e.g., letter, mail, phone call, in-person meeting, etc.) and a description of the content of such communication.

**ANSWER:** Objection – this Interrogatory is overly broad, unduly burdensome, and seeks information protected by the attorney-client and work product privileges. Subject to and without waiving these objections, communications regarding the Grant Agreement first began in early 2000 among Cafesjian and Waters and Assembly representatives, including Hirair Hovnanian. An initial letter grant agreement was executed by Cafesjian on February 21, 2000 and accepted by the Assembly. Negotiations for the Grant Agreement executed on November 1, 2003 began in early 2002 and were among Cafesjian and Waters and Assembly representatives. These communications were oral and written. Pursuant to Rule 33(d), please see documents produced.

**INTERROGATORY NO 4:** Identify and describe any and all communication you had with AGM&M, CFF, Cafesjian, or any other person or entity regarding the disputed properties, including the date of each communication, the individual(s) with whom you had such communication, the form of such communication (e.g., letter, mail, phone call, in-person meeting, etc.) and a description of the content of such communication.

**ANSWER:** Objection – this Interrogatory is overly broad, unduly burdensome, and seeks information protected by the attorney-client and work product privileges. Subject to and without waiving these objections, Waters had oral and written communications with the previous owners of the grant properties regarding the acquisition of the grant properties by TomKat, LP. Waters and Cafesjian had oral and written communications with Assembly representatives regarding the grant properties. Pursuant to Rule 33(d), please see documents produced.

**INTERROGATORY NO 5:** For each of the disputed properties, identify and describe in detail the following:

a) The date and manner in which the property was acquired or purchased by AGM&M, including without limitation the identity of the individuals who negotiated the purchase on behalf of AGM&M as well as the identities of the individuals who negotiated the purchase on behalf of the seller of the property;

b) The amount of the most recent purchase price and the manner by which such price was calculated, including the identity of the individual who calculated the price;

c) The person or entity that currently holds title to the property;

d) Any other persons or entities that you allege have an interest in the property and a description of the nature and extent of such interest;

e) To the extent you allege that an entity or person other than AGM&M has an interest in the property, the factual basis for such assertion; and

f) The current fair market value of the property.

**ANSWER:**

a) *See* Grant Agreement, attached to amended complaint as Exhibit A, and Transfer Agreement, attached to amended complaint as Exhibit B.  AGM&M representatives considered and approved AGM&M's acquisition of the grant properties.  Pursuant to Rule 33(d), see documents bates stamped CFF/Waters 2804-2857; see also documents produced.

b) *See* Grant Agreement, attached to amended complaint as Exhibit A, and Transfer Agreement, attached to amended complaint as Exhibit B.  The purchase price of the National Bank building for the most recent transfer from the Assembly to AGM&M was negotiated by and between Assembly representatives and AGM&M representatives, including Waters.  The purchase prices of the four adjacent properties for the most recent conveyance by TomKat, LP were negotiated among Cafesjian and CFF, in coordination with TomKat and its representative, Waters, and Assembly representatives.  The Assembly subsequently transferred the opportunity to take title to the grant properties and the Grant Agreement obligations to AGM&M as authorized by AGM&M representatives and the Transfer Agreement.  The purchase price for each grant property was the amount initially expended by TomKat to acquire or contract to acquire the property, plus closing and property holding costs.  Pursuant to Rule 33(d), see documents bates stamped CFF/Waters 2804-2857; see documents produced.

c) AGM&M holds title to the following properties:  (1) former National Bank of Washington building; (2) 1334-36 G Street NW; (3) 1338 G Street; and (4) 1342 G Street.  The fifth property located at 1340 G Street was acquired pursuant to a Contract for Deed which is held by the Ana Sherman Revocable Trust.  The deed is currently held in escrow for AGM&M.  Pursuant to Rule 33(d), see documents bates stamped CFF/Waters 2804-2857; see documents produced.

d) *See* Grant Agreement, attached to amended complaint as Exhibit A, and Transfer Agreement, attached to amended complaint as Exhibit B.  As provided in the Grant Agreement, Cafesjian and CFF retain a reversionary interest in all five grant properties.  Because the grant properties are owned by a non-profit organization, the public may also have an interest in the grant properties.  The Ana Sherman Revocable Trust also retains an interest in the property located at 1340 G Street until the Contract for Deed is satisfied.

e) *See* Grant Agreement, attached to amended complaint as Exhibit A, and Transfer Agreement, attached to amended complaint as Exhibit B. The money donated by Cafesjian and CFF to enable AGM&M to acquire the grant properties was subject to the various conditions as specified in the Grant Agreement. If these conditions are not satisfied, the properties are subject to reversion pursuant to the terms of the Grant Agreement. Because the property located at 1340 G Street is being acquired pursuant to a Contract for Deed, failure to make payments as required may result in the property's return to the Ana Sherman Revocable Trust.

f) CFF has no responsive information in its possession.

**INTERROGATORY NO 6:** Identify and describe in detail the circumstances surrounding your execution of the Memorandum, including without limitation:

a) The date you executed the Memorandum;

b) The names of all persons you spoke with regarding the execution of the Memorandum both before and after the execution;

c) The identities of any persons who were present when you authorized the Memorandum; and

d) To the extent you allege that you received from AGM&M or its affiliates, subsidiaries, employees, servants, agents, officers, parents, Trustees, and representatives authorization for you to execute the Memorandum, the precise manner and nature of any authorization that you allege you received, including without limitation the identity of the person or entity who authorized the execution, the date such authorization was provided, the manner in which such authorization was provided, and a detailed description of the authorization itself.

**ANSWER:**

a) *See* Memorandum.

b) Waters spoke with John Waters, Sr. and Cafesjian before and after the Memorandum was executed.

c) The Memorandum was authorized pursuant to the Unanimous Written Consent in Lieu of the Organization Meeting of the Board of Trustees of Armenian Genocide Museum and Memorial, Inc., dated October 30, 2003.

d) *See* Unanimous Written Consent in Lieu of the Organization Meeting of the Board of Trustees of Armenian Genocide Museum and Memorial, Inc., dated October 30, 2003.

**INTERROGATORY NO 7:** Identify and describe in detail the circumstances surrounding your recording of the Memorandum with the District of Columbia Registry of Deeds, including without limitation:

a) The date you recorded the Memorandum;

b) The names of all persons you spoke with regarding the recording of the Memorandum both before and after the execution;

c) The identities of any persons who were present when you recorded the Memorandum; and

d) To the extent you allege that you received from AGM&M or its affiliates, subsidiaries, employees, servants, agents, officers, parents, Trustees, and representatives authorization for you to record the Memorandum, describe the precise manner and nature of any authorization that you allege you received, including without limitation the person or entity who authorized the recording, the date such authorization was provided, the manner in which such authorization was provided, and a detailed description of the authorization itself.

**ANSWER:**

a) *See* Memorandum.

b) Waters spoke with Grant Berning at Landmark Title before and after the recording of the Memorandum.

c) Waters has no responsive information in his possession.

d) *See* Answer to Interrogatory No. 6(d).

**INTERROGATORY NO 8:** Please identify and state separately for each and every person whom you expect to call as a witness at the trial of this action the following:

a) the full name, residential address, business address and field of each such witness;

b) the subject matter on which each such witness is expected to testify;

c) the substance of the facts and opinions to which each such witness is expected to testify.

**ANSWER:**

a) (1)    John J. Waters, Jr.; Business Address: 15 South Fifth Street, Suite 900, Minneapolis, MN 55402; Waters will testify fact witness.

(2)    Gerard L. Cafesjian; Business Address: 15 South Fifth Street, Suite 900, Minneapolis, MN 55042; Cafesjian will testify as a fact witness.

(3)    Ross Vartian; Business Address: 1518 K Street NW, Suite M, Washington D.C. 20005; Vartian will testify as a fact witness.

Additional witnesses may be identified in accord with the Court's scheduling order.

b) Waters, Cafesjian and Vartian will testify regarding the claims against defendants and defendants' counterclaim against AGM&M.

c) Each witness has personal knowledge of the facts at issue in this dispute.

**AS TO ANSWERS:**

_____
John J. Waters, Jr.

Subscribed and sworn before me
This ___ day of April, 2008

_____
Notary Public

**AS TO OBJECTIONS:**
Dated:  April 23, 2008                        **BRIGGS AND MORGAN, P.A.**

By: _____
       Timothy R. Thornton (#109630)
       Molly M. Borg (#0331922)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN  55402-2157
(612) 977-8400

**AND**

**HOGAN AND HARSTON LLP**

Ty Cobb (DC Bar No. 270736)
Peter C. Lallas (D.C. Bar No. 384062)
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Tel:  (202) 637-5600

**ATTORNEYS FOR DEFENDANTS**

# EXHIBIT 2

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

Direct Number: (202) 879-3924
tfcullen@jonesday.com

June 10, 2008

VIA EMAIL

Mr. Arnold R. Rosenfeld
Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, MA, 02111-2950

Re:    Dismissal and Consolidation Proposal

Dear Arnie:

Based on our discussion from yesterday, please see the following proposal:

1.    The parties will agree to a joint withdrawal of the appeal and cross appeal presently pending in the 8th Circuit (Appeal Nos. 08-1744, 08-2006), which arise from Minnesota 1, 07-cv-02079-JNE;

2.    The parties will file a stipulated dismissal without prejudice in Minnesota 2, 07-cv-04212-JNE. The Cafesjian Family Foundation, Inc. et al. will dismiss its motion for sanctions with prejudice;

3.    The parties will file a stipulated motion to transfer Minnesota 3, 08-cv-00373-JNE to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. §1404(a).

4.    Following transfer of Minnesota 3, 08-cv-00373-JNE, the parties will file a stipulated motion to consolidate before Judge Roberts Minnesota 3, DC 2, 1:07-cv-01746-RWR, and DC 3, 08-cv-255-CKK;

5.    The Armenian Assembly of America, Inc., et al. will provide the Cafesjian Family Foundation, Inc. et al. written permission to amend its counterclaim in DC 3, 08-cv-255-CKK, pursuant to Rule 15(a)(2);

6.    A lis pendens will be immediately filed and recorded in the D.C. Registry of Deeds. Once the lis pendens is filed, the Memorandum of Agreement Reserving Rights will be removed;

7.    The Cafesjian Family Foundation, Inc., et al. will submit a suggestion of mootness for DC 1, 1:07-1259-CKK. In the event the court determines DC 1 is

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Mr. Arnold R. Rosenfeld
June 10, 2008
Page 2

not moot, our client will move to consolidate DC 1 with the other consolidated
actions (DC 2, DC 3, and MN 3) pending before Judge Roberts;

8.      The parties will agree to reschedule the depositions presently planned for the
        week of June 16, 2008 in DC 1, 1:07-1259-CKK.  The parties will file a stipulated
        Amended Status Report as to Discovery Plan setting forth the new deposition
        dates, which will be scheduled prior to August 22, 2008.  The parties agree that
        the depositions will cover all pending actions; and

9.      The parties will jointly seek a status conference before Judge Ericksen, Judge
        Roberts, and Judge Kollar-Kotelly to discuss the plan going forward.

Please let me know if you have any questions.  I look forward to hearing from you.

Very truly yours,

*/s/ Thomas F. Cullen, Jr.*

Thomas F. Cullen, Jr.