UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC., <br><br>    Plaintiff, <br><br>       v. <br><br> THE CAFESJIAN FAMILY FOUNDATION, INC., *et al.*, <br><br>    Defendants. | Civil Action No. 07-1259 (CKK) |

**MEMORANDUM OPINION**
(February 5, 2009)

      This case arises out of a very bitter and very unfortunate dispute between Plaintiff The Armenian Genocide Museum & Memorial, Inc. ("AGM&M") and Defendants The Cafesjian Family Foundation, Inc. ("CFF"), and two of its officers, John J. Waters, Jr. ("Waters, Jr.") and Gerard L. Cafesjian ("Cafesjian") (collectively, "Defendants"), relating to the construction of an Armenian museum and memorial in Washington, D.C.  Although the parties have reportedly expended significant time attempting to resolve their disputes, they continue to press forward with any and all grievances against each other in this and multiple other cases filed in this District.

      Currently pending before the Court is Defendants' [44] Motion to Dismiss Counts One, Three, and Four of the Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which AGM&M has opposed.  After considering all of the parties' submissions to the Court, and all relevant case law, statutory authority, and the entire record of the case as a whole, the Court shall DENY Defendants' Motion to Dismiss, *except* for

AGM&M's claim against Cafesjian in connection with the filing of a *lis pendens* on the properties at issue, which the Court shall convert into a Motion for Summary Judgment and GRANT in favor of Defendants, for the reasons that follow.

## I. BACKGROUND

The following facts are drawn from AGM&M's Second Amended Complaint and are not based on any findings of fact made by the Court. On a motion to dismiss, a court must accept as true all well-pleaded factual allegations set forth in the complaint. *Scandinavian Satellite Sys. v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002).[1]

*A.     The Origins of AGM&M*

Beginning in the 1990s, a non-party advocacy group called the Armenian Assembly of America (the "Assembly") began investigating the construction of a permanent museum and memorial in Washington, D.C., dedicated to the victims and survivors of the Armenian Genocide. *See* Second Am. Compl. ¶¶ 8, 9. In 1999, the Assembly located a possible site for the museum and memorial at the National Bank of Washington Building at 14th and G Streets in Washington, D.C. *Id.* ¶ 10. In order to fund the purchase of this site, the Assembly sought donations and pledges from various sources, including from Cafesjian, the President and Director of CFF. *Id.* ¶ 11.

On November 1, 2003, the Assembly executed a Grant Agreement with CFF and Cafesjian. *Id.* ¶ 13. The Grant Agreement contains several provisions that are relevant to

---

[1] The Court shall limit its review of the facts to only those related to Defendants' Motion to Dismiss.

Defendant's Motion to Dismiss. First, the Grant Agreement sets forth the terms and conditions of two donations (called "Grants") made by Cafesjian for the Assembly's construction project. The first donation of $4 million (apparently given along with a supplemental loan) was provided to help the Assembly purchase the National Bank of Washington building. *Id.*, Ex. 1 § 1.1-1.2 (11/1/03 Grant Agreement). A second donation of $12.85 million was provided for the purchase of four adjacent properties. *Id.* § 2.1-2.2. Second, CFF and the Assembly were required to, and did, create Plaintiff AGM&M as a non-profit corporation. *Id.* § 5.1. Third, the Assembly was required to enter into a Transfer Agreement with AGM&M whereby the Assembly would transfer to AGM&M all of its "right, title, and interest" in assets and pledges contributed to the Assembly for the museum and memorial project. *Id.* § 5.3(A). Fourth, the National Bank of Washington Building site and the four adjacent properties (the "Grant Property") were to be used only in connection with the museum and memorial, subject to "Plans" approved by the AGM&M Board of Trustees. *Id.* § 3.1(A). Finally, the Grant Agreement included a reversionary provision related to Cafesjian's donations:

> (B) If the Grant Property is not developed prior to December 31, 2010 in accordance with [Plans to be approved by AGM&M's Board of Trustees], or if the Grant Property is not developed in substantial compliance with the Plans including with respect to the deadlines for completion of the construction, renovation, installation and other phases detailed in the Plans, then:
>
> i. in the event any portion of the Grants has not been funded, this Agreement terminates; and
>
> ii. to the degree any portion of the Grants has been funded, at the Grantor's sole discretion, the Assembly shall return to the Grantor the Grant funds or transfer to the Grantor the Grant property.

*Id.* § 3.1(B).

> B.   *The Origins of the Present Dispute*

AGM&M is governed, managed, and controlled by a Board of Trustees, as set forth in its Articles of Incorporation and By-Laws. *Id.* ¶¶ 23-25. Under its By-Laws, each trustee is entitled to a exercise one trustee vote, and one-half of the aggregate eligible Board of Trustees votes constitute a quorum at any properly convened Board of Trustees meeting. *Id.* ¶¶ 26, 28. Cafesjian and Waters, Jr. were members of the AGM&M Board of Trustees at times relevant to the Second Amended Complaint. *Id.* ¶ 43.

On October 23, 2006, "without a meeting of the Board of Trustees having been properly noticed, and without a properly noticed meeting of the Board of Trustees having been held at which the matter could have been discussed, Waters, Jr. executed, purportedly as an authorized officer of both [AGM&M] and CFF, a Memorandum of Agreement ["MOA"] Reserving Rights . . . purportedly between [AGM&M] and CFF." *Id.* ¶ 30 (emphasis in original omitted). On October 27, 2006, "and again without a meeting of the Board of Trustees having been properly noticed, and without a properly noticed meeting of the Board of Trustees having been held at which the matter could have been discussed, Waters, Jr. caused the [MOA] to be filed and recorded with the Recorder of Deeds for the District of Columbia." *Id.* ¶ 32 (emphasis in original omitted). Waters, Jr. consulted with Cafesjian prior to executing and filing the MOA. *Id.* ¶ 31.

Because the Board of Trustees did not authorize Waters, Jr. to execute and record the MOA on behalf of AGM&M, "Waters, Jr. did not have the authority to execute the [MOA] on behalf of [AGM&M] or to file and record the [MOA] with the Recorder of Deeds on behalf of [AGM&M]." *Id.* ¶ 33. Once the other Trustees learned of the MOA, they demanded that

Defendants have it rescinded and removed from the District of Columbia's land records, which Defendants refused to do.  *Id.* ¶ 34.

Over one year later, on July 16, 2008, Waters, Jr. recorded a release of the MOA.  *Id.* ¶ 36.  The properties continued to have a cloud on their title, however, because the previous month on June 26, 2008, Defendants filed a Notice of Pendency of Action ("*lis pendens*") with the Recorder of Deeds.  *Id.* ¶ 37.  Accordingly, beginning with the MOA and continuing with the *lis pendens*, Defendants created a cloud on AGM&M's property titles.  *Id.* ¶ 35.  AGM&M alleges that it suffered damages arising from the filing of both the MOA and *lis pendens* based on "the delay in the development of the museum caused by Defendants' actions, and damages associated with additional costs required to secure financing, insurance, and other items necessary for the development of the museum."  *Id.* ¶ 39.

AGM&M initiated this suit on July 16, 2007.  Its Second Amended Complaint contains four claims for relief, only three of which are subject to Defendant's Motion to Dismiss:

- Count I:  Breach of fiduciary duty against Waters, Jr. and Cafesjian;
- Count III:  Declaration as to Non-Enforceability of Grant Agreement Reversionary Clause; and
- Count IV: Quiet Title and Removal of the *Lis Pendens*.

*Id.* ¶¶ 42-63.  Defendants filed their Motion to Dismiss on August 15, 2008, AGM&M filed an Opposition on August 29, 2008, and Defendants filed their Reply on September 8, 2008.  At the request of Magistrate Judge Alan Kay on behalf of the parties, the Court held in abeyance its ruling on this motion during the parties' settlement negotiations, which were ultimately unsuccessful.  The Motion to Dismiss is therefore fully briefed and now ripe for decision.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  While the court must construe the Complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Moreover, the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).  The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

## III.  DISCUSSION

A.      *Count I:  Breach of Fiduciary Duty Claim Against Cafesjian and Waters, Jr.*

Count I of the Second Amended Complaint alleges that Cafesjian and Waters, Jr. breached their fiduciary duties through the "deliberate execution and filing" of the MOA, which

was "*ultra vires*." Second Am. Compl. ¶ 44. AGM&M further alleges that Cafesjian and Waters, Jr. "were aware that the filing of the *Lis Pendens* would continue to result in the delay and obstruction of the museum project, and would cause substantial damages to AGM&M." *Id.* ¶ 46. As a result, AGM&M "incurred substantial damages, including . . . fees and costs necessitated by the filing and litigation of this action, and damages related to the delay in the development of the museum . . . as financing, insurance, and other items necessary for the construction and completion of the museum were delayed or made more costly." *Id.* ¶¶ 45, 48.

The elements necessary to state a legally cognizable breach of fiduciary duty claim are not in dispute. AGM&M must allege facts sufficient to show that (1) Cafesjian and Waters, Jr. owed AGM&M fiduciary duties; (2) Cafesjian and Waters, Jr. breached their duties; and (3) the breach was a proximate cause of an injury to AGM&M. *See Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 5-6 (D.D.C. 2008).

AGM&M has satisfied the first of these elements, and Defendants do not argue otherwise. As members of AGM&M's Board of Trustees, both Cafesjian and Waters, Jr. were required to "'act in the utmost good faith, and this good faith forbids placing [themselves] in a position where [their] individual interest clashes with [their] duty to the corporation." *Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1210 (D.C. 2002) (quoting Fletcher Cyc. Corp. § 837.50). Cafesjian and Waters, Jr. were also obligated to "manage the corporation solely in its best interest [and] not as a vehicle for promoting their personal beliefs or causes." *Id.*

The second element–whether Cafesjian and Waters, Jr. breached their fiduciary duties–is hotly contested. Defendants argue that Cafesjian and Waters, Jr. could not have breached their fiduciary duties to AGM&M because "there is no prohibition against a director or officer holding

a substantive interest against the corporation he serves, and there is no breach of fiduciary duty when he exercises the rights under that interest." Defs.' Mot. at 6.  According to Defendants, Cafesjian and CFF had a substantive reversionary interest in the five properties at issue, and [] they "were entitled to take all actions that any other lienholder had, despite the fact that Mr. Cafesjian and CFF's officer John Waters, Jr. were on the AGM&M's board." *Id.* at 8.  *See also* Defs.' Reply at 3 ("because AGM&M agreed to conditionally revert the properties to Mr. Cafesjian and CFF, they had the same right to give notice of the reversion, and protect it with a *lis pendens*, as any other person with a land interest could, and did not breach their fiduciary duties by doing so").  Although Defendants acknowledge that the filing of the MOA "was improper," Defs.' Mot. at 9, they conclude that the error was "effectively harmless." *Id.* at 10.

AGM&M takes a quite different view of the allegations in the Second Amended Complaint.  According to AGM&M, "it is readily apparent that the Defendants are actively taking steps intended to delay the development of the Grant property," so as to force the reversion of Cafesjian's donations.  Pl.'s Opp'n at 12.  In doing so, Cafesjian and Waters, Jr. "'failed to perform their duties . . . honestly, in good faith, and with a reasonable amount of diligence and care,'" *id.* at 10-11 (quoting *Stern v. Lucy Webb Hayes Nat'l Training Sch. for Deaconesses and Missionaries*, 381 F. Supp. 1003, 1015 (D.D.C. 1974)), and "sought to advance" their interests "at the direct expense of AGM&M . . . ." *Id.* at 11.

While the Court agrees with Defendants that they have a right to protect Cafesjian's lienholder interests even though they may also be fiduciaries of AGM&M, those lienholder interests do not give Cafesjian and Waters, Jr. license to actively undermine the ability of AGM&M to operate as it was intended.  None of the cases cited by Defendants suggest

otherwise. *See, e.g.*, *Storetrax.com, Inc. v. Gurland*, 915 A.2d 991, 994, 1004, 1008 (Md. 2007) (holding that an officer did not breach his fiduciary duties by, among other things, filing a lawsuit against the corporation and seeking summary judgment by default, but explaining that the officer had to strike "the proper balance between [his] claimed legal right . . . [and] fulfill[ing] his fiduciary obligation to act in [the corporation's] best interests," which he did in part by giving notice that the litigation was imminent and advising the corporation on how it could avoid the litigation).

For present purposes, the Court must "construe the complaint in the light most favorable to [AGM&M] and accept the complaint's allegations as true." *Mawalla v. Hoffman*, 569 F. Supp. 2d 253, 256 (D.D.C. 2008) (citing *Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 16-17 (D.C. Cir. 2008)).  The Second Amended Complaint alleges that Waters, Jr., in coordination with Cafesjian, executed and recorded an MOA on behalf of AGM&M when AGM&M never authorized the execution and recording of the MOA.  Second Am. Compl. ¶¶ 31-32.  Based on that allegation, AGM&M has a cognizable legal claim that Cafesjian and Waters, Jr. were not acting in the best interests of AGM&M by recording the MOA because the Board of Trustees did not want it recorded and expressly sought its removal from the Recorder of Deeds after learning of its existence.  *Id.* ¶ 34.  Based on these and other allegations in the Second Amended Complaint, the Court finds that AGM&M has sufficiently alleged a breach of fiduciary duty against Cafesjian and Waters, Jr., in connection with the filing of the MOA.

The analysis with respect to the filing of the *lis pendens* is more nuanced.  Defendants' Motion to Dismiss points out that Cafesjian resigned from the Board of Trustees in September 2006, prior to the filing of the *lis pendens* in June 2008.  *See* Defs.' Mot. at 10 ("Mr. Cafesjian

had already resigned from AGM&M by the time the *lis pendens* was filed"). AGM&M's Opposition concedes this point. *See* Pl.'s Opp'n at 6 ("On September 13, 2006, Cafesjian sent a letter to the other Trustees of AGM&M, announcing his resignation as a Trustee . . ."). Defendants' Motion to Dismiss also argues that Cafesjian no longer owed fiduciary duties to AGM&M after his resignation and thus could not have breached any fiduciary duty in 2008. *See* Defs.' Mot. at 10-11. AGM&M failed to respond to this argument which, in this district, acts as a concession. *See, e.g.*, *Fox v. Am. Airlines, Inc.*, 295 F. Supp. 2d 56, 58 (D.D.C. 2003), *aff'd*, 389 F.3d 1291 (D.C. Cir. 2004). Because the date that Cafesjian resigned from the Board of Trustees was not pled in the Second Amended Complaint, the Court shall convert Defendants' Motion to Dismiss into one for Summary Judgment for the sole purpose of considering the uncontested facts contained in the pleadings that Cafesjian was no longer on the Board of Trustees in 2008. Because AGM&M conceded Defendants' argument that Cafesjian could not have breached his fiduciary duties after resigning as a member of the Board of Trustees, the Court shall grant summary judgment in favor of Defendants on the claim that Cafesjian breached his fiduciary duties by filing the *lis pendens*.[2]

With respect to Waters, Jr., Defendants argue that he was not involved in the filing of the *lis pendens* and, even if he had been involved, it would not have constituted a breach of fiduciary duty. *See* Defs.' Mot. at 11. Although the Court agrees that the Second Amended Complaint is rather opaque with respect to Waters, Jr.'s involvement with the *lis pendens* filing, the Court

---

[2] The Court notes that Cafesjian also appears to have resigned from the Board of Trustees prior to the filing of the MOA (which occurred in October 2006), but Defendants did not argue for dismissal on this basis. The Court shall refrain from addressing this argument because Defendants did not raise it.

finds that AGM&M *did* allege that Waters, Jr. was involved in the filing in some capacity. *See* Second Am. Compl. ¶ 48 ("As a direct and proximate result of Cafesjian and Waters, Jr.'s filing of the *Lis Pendens*, AGM&M has incurred substantial and foreseeable damages"). Ultimately, whether the filing of the *lis pendens* may constitute a breach of fiduciary duty will depend on the evidence that will be offered in this case. AGM&M alleges that Waters, Jr. sought to maintain a cloud on the title of AGM&M's properties through the filing of the *lis pendens* after improperly clouding the title with the MOA. Second Am. Compl. ¶ 46. AGM&M further alleges that the purpose of recording the MOA and *lis pendens* was to delay development of these properties and force a reversion of Cafesjian's donations, which clearly conflicts with the best interests of AGM&M. *Id.* ¶¶ 35, 39, 46. *See also* Pl.'s Opp'n at 12. The Complaint and pleadings also do not clarify whether Waters, Jr. was, like Cafesjian, no longer a member of AGM&M's Board of Trustees at the time the *lis pendens* was recorded. In fact, the pleadings appear to contradict each other while setting forth numerous facts outside the scope of the Second Amended Complaint. *See, e.g.*, Defs.' Mot. at 10 (indicating that Waters, Jr. was a member of the Board of Trustees at the time of *lis pendens* was filed); Pl.'s Opp'n at 6 (indicating that Waters Jr. had resigned his position as treasurer). Defendants' Motion to Dismiss is not the appropriate procedural vehicle for considering these facts nor resolving any factual disputes between the parties. In any event, based the allegations set forth above and those contained in the Second Amended Complaint, the Court finds that AGM&M has sufficiently alleged a breach of fiduciary duty against Waters, Jr., in connection with the filing of the *lis pendens*.

The third and final element of a breach of fiduciary duty claim requires AGM&M to plead facts sufficient to show that a breach of fiduciary duty caused an injury to AGM&M. The

Second Amended Complaint alleges that AGM&M suffered damages arising from the filing of both the MOA and *lis pendens* based on "the delay in the development of the museum caused by Defendants' actions, and damages associated with additional costs required to secure financing, insurance, and other items necessary for the development of the museum."  Second Am. Compl. ¶ 39.  Although Defendants argue that "AGM&M is not entitled to damages based on a party's mere provision of *notice* of [a substantive reversionary interest], even if the notice was procedurally improper," Defs.' Mot. at 11, that argument requires the Court to accept Defendants' interpretation of AGM&M's allegations.  At this stage, the Court is required to construe all facts in AGM&M's favor, and in doing so, the Court finds that AGM&M has sufficiently alleged damages caused by the actions of Cafesjian and Waters, Jr.

Accordingly, the Court shall deny Defendants' Motion to Dismiss Count I of the Second Amended Complaint, *except* for the claim against Cafesjian in connection with the filing of the *lis pendens*, which the Court shall convert into a motion for summary judgment and grant in favor of Defendants.

  B.  *Count III:  Declaration as to Non-Enforceability of Grant Agreement Reversionary Clause*

Count III of the Second Amended Complaint seeks a declaration that the reversionary clause in the Grant Agreement is non-enforceable based on the actions of Cafesjian and Waters, Jr.[3]  Defendants argue that this claim should be dismissed because the recording of the MOA and

---

[3] Defendants assert that this claim is "identical to a claim" raised by AGM&M in *Armenian Assembly of America, Inc. v. Cafesjian*, No. 08-255, currently pending before this Court.  That is not entirely accurate.  Even though the claims both seek a declaration that the reversionary clause of the Grant Agreement is unenforceable, the claims are predicated on different factual allegations.

*lis pendens* "do not themselves state any legally cognizable harm." Defs.' Mot. at 14. *See also* Defs.' Reply at 5 (arguing that the filing of the MOA and *lis pendens* "were lawful and therefore cannot serve as the basis for invalidating the substantive [reversionary] interest"). This argument depends on whether AGM&M is ultimately successful on its breach of fiduciary duty claim. Because the Court is denying Defendants' Motion to Dismiss that claim (except for the one portion of the claim concerning Cafesjian and the filing of a *lis pendens*), the Court finds that it is premature to consider dismissal of Count III, which may or may not constitute an appropriate remedy depending on the evidence yet to be adduced in this case. Accordingly, the Court shall deny Defendant's Motion to Dismiss Count III of the Second Amended Complaint.

      C.      *Count IV: Quiet Title and Removal of the Lis Pendens*

Count IV seeks a declaration to quiet title, removal of the *lis pendens* on the properties at issue, and an injunction to prevent Defendants from making any further efforts to cloud the title on the properties.[4] Defendants argue that this claim should be dismissed because CFF has an interest in the property located in Washington, D.C. by virtue of the reversionary clause in the Grant Agreement, and D.C. Code § 42-1207 allows a *lis pendens* to be filed during the pendency of a proceeding that affects the title to a property located in Washington D.C. *See* Defs.' Mot. at 19. Should AGM&M prevail on Counts I and III of the Second Amended Complaint, however, the relief requested by this claim may be entirely appropriate. Just as with Count III above, the Court finds that it is premature to consider dismissal of Count IV, which may or may not

---

[4] Plaintiffs contend that Defendants have conceded that they have no rights with respect to the properties based on language extracted from a court filing by Defendants in a District of Minnesota case. *See* Second Am. Compl. ¶¶ 40-41, 60. A review of that filing, attached to the Second Amended Complaint, reveals that it does not contain such a concession. *See* Defs.' Mot. at 16-18.

constitute an appropriate remedy depending on the evidence yet to be aduced in this case. Accordingly, the Court shall deny Defendants' Motion to Dismiss Count IV of the Second Amended Complaint.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall DENY Defendants' Motion to Dismiss, *except* for the claim against Cafesjian in connection with the filing of the *lis pendens* on the properties at issue, which the Court shall convert into a Motion for Summary Judgment and GRANT in favor of Defendants.  An appropriate Order accompanies in this Memorandum Opinion.

Date: February 5, 2009

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge
