**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| ARMENIAN GENOCIDE MUSEUM AND MEMORIAL, INC., |
| |
| Plaintiff, |
| |
| v. |
| |
| THE CAFESJIAN FAMILY FOUNDATION, INC., *et al.*, |
| |
| Defendants. |

Civil Action No. 07-1259 (CKK)

**MEMORANDUM OPINION**
(April 15, 2009)

This case, filed by The Armenian Genocide Museum & Memorial, Inc. ("AGM&M"), has

its origins in a dispute related to the construction of an Armenian museum and memorial in

Washington, D.C.  On February 5, 2009, the Court granted-in-part and denied-in-part a Motion to

Dismiss Counts I, III, and IV of the Second Amended Complaint filed by three of the four named

Defendants in this case.  Currently pending before the Court is a Motion to Dismiss filed by the

fourth named Defendant, John Waters, Sr., relating to Count II of the Second Amended

Complaint.  After a searching review of the parties' submissions, all relevant case law, statutory

authority, and the entire record of the case as a whole, the Court shall DENY Defendant's [62]

Motion to Dismiss, for the reasons set forth below.

**I.  BACKGROUND**

The following facts are drawn from AGM&M's Second Amended Complaint and are not

based on any findings of fact made by the Court.

Beginning in the 1990s, a non-party advocacy group called the Armenian Assembly of

America (the "Assembly") began investigating the construction of a permanent museum and memorial in Washington, D.C., dedicated to the victims and survivors of the Armenian Genocide.  *See* Second Am. Compl. ¶¶ 8, 9.  In 1999, the Assembly located a possible site for the museum and memorial at the National Bank of Washington Building at 14th and G Streets in Washington, D.C.  *Id.* ¶ 10.  In order to fund the purchase of this site, the Assembly sought donations and pledges from various sources, including from Gerard L. Cafesjian ("Cafesjian"), the President and Director of The Cafesjian Family Foundation, Inc. ("CFF").

On November 1, 2003, the Assembly executed a Grant Agreement with CFF and Cafesjian that, among other provisions, set forth the terms and conditions of two donations made by Cafesjian to purchase the Bank of Washington Building and four adjacent properties.  *Id.* ¶ 13. Pursuant to the Grant Agreement, CFF and the Assembly were required to, and did, create Plaintiff AGM&M as a non-profit corporation, to which the Assembly was required to transfer all of the "right, title, and interest" in assets and pledges contributed to the Assembly for the museum and memorial project.  *Id.*  John Waters, Sr. "represented AGM&M in connection with the acquisition of the [properties adjacent to the Bank of Washington Building] by AGM&M." *Id.* ¶ 31.  *See also id.* ¶ 50 ("Waters Sr. represented AGM&M in connection with the acquisition of the properties by AGM&M").

AGM&M is governed, managed, and controlled by a Board of Trustees, as set forth in its Articles of Incorporation and By-Laws.  *Id.* ¶¶ 23-25.  On October 23, 2006, without the direction and consent of the Board of Trustees, John Waters, Jr. (an officer of both CFF and AGM&M) "executed, purportedly as an authorized officer of both [AGM&M] and CFF, a Memorandum of Agreement ["MOA"] Reserving Rights . . . purportedly between [AGM&M]

2

and CFF." *Id.* ¶ 30.  Because the Board of Trustees did not authorize Waters, Jr. to execute and

record the MOA on behalf of AGM&M, "Waters, Jr. did not have the authority to execute the

[MOA] on behalf of [AGM&M] or to file and record the [MOA] with the Recorder of Deeds on

behalf of [AGM&M]." *Id.* ¶ 33.  Once the other Trustees learned of the MOA, they demanded

that Defendants have it rescinded and removed from the District of Columbia's land records,

which Defendants refused to do.[1]  *Id.* ¶ 34.

 Prior to executing and filing the MOA, Waters, Sr. "consulted with" and "assisted"

Waters, Jr.  *Id.* ¶¶ 31, 51.  In addition,

> Waters Sr. was aware that the execution and recording of the [MOA] would harm
> AGM&M, but nevertheless assisted Waters Jr. with the filing of the [MOA],
> failed to advise any independent members of the Board of Trustees of AGM&M
> of either the execution or the recording of the [MOA], and failed to take
> reasonable steps to protect AGM&M's interests with respect to the Properties.

*Id.* ¶ 51.

 AGM&M initiated this suit on July 16, 2007.  Count II of the Second Amended

Complaint alleges that Waters, Sr. breached his fiduciary duties to AGM&M.  *Id.* ¶¶ 49-52.

AGM&M also alleges that it suffered damages arising from Waters, Sr.'s acts, including fees and

costs associated with "the delay in the development of the museum, and damages related to

additional difficulty in securing insurance and financing related to" the properties.  *Id.* ¶ 52.

 Waters, Sr. filed the instant Motion to Dismiss for lack of personal jurisdiction pursuant

to Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim upon which relief can

be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  AGM&M filed an Opposition

---

[1] Waters, Jr. eventually recorded a release of the MOA on July 16, 2008.  Second Am.
Compl. ¶ 36.

and Waters, Sr. has filed a Reply.  Defendant's Motion to Dismiss is therefore fully briefed and

ripe for decision.

## II.  LEGAL STANDARD

A.     *Federal Rule of Civil Procedure 12(b)(2)*

A plaintiff bears the burden of  establishing a factual basis for asserting personal

jurisdiction over a defendant.  *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir.

1990).  Accordingly, a plaintiff must allege specific acts connecting the defendant with the

forum.  *See Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C.

Cir. 2001).  In contrast to a Motion to Dismiss brought under Federal Rule of Civil Procedure

12(b)(6), the court need not treat all of a plaintiffs' allegations as true when determining whether

personal jurisdiction exists over a defendant.  Instead, the Court "may receive and weigh

affidavits and any other relevant matter to assist it in determining the jurisdictional facts."

*United States v. Phillip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (citation

omitted).  Nevertheless, the Court must resolve any factual discrepancies with regard to the

existence of personal jurisdiction in favor of the plaintiff.  *See Crane*, 894 F.2d at 456.

B.     *Federal Rule of Civil Procedure 12(b)(6)*

Plaintiffs must file a complaint that contains "'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 550

U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  In

evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe

the complaint in a light most favorable to the plaintiff and must accept as true all reasonable

4

factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  While the court must construe the Complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Moreover, the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).  The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

### III.  DISCUSSION

A.   *Motion to Dismiss for Lack of Personal Jurisdiction*

AGM&M predicates personal jurisdiction over Waters, Sr. based on the District of Columbia long-arm statute that permits the exercise of personal jurisdiction over a person who has transacted business in the District of Columbia, provided that the claim for relief arises from the same conduct:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(1) transacting any business in the District of Columbia[.]

* * *

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

5

D.C. Code § 13-423.[2]

This provision has been given an "expansive interpretation," such that its reach is "coextensive with the due process clause" of the United States Constitution.  *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (internal quotation marks omitted). Accordingly, Section 13-423(a)(1) grants personal jurisdiction over persons who have engaged in "any transaction of business in the District of Columbia that can be reached jurisdictionally without offending the due process clause."  *Mouzavires v. Baxter*, 434 A.2d 988, 993 (D.C. 1981) (en banc)).  As a result of this interpretation, "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry . . . ."  *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

There are no "mechanical tests" or "talismanic formulas" used by courts to determine whether the assertion of personal jurisdiction is appropriate in a particular case.  *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000).  Nevertheless, courts must examine whether "the quality and nature of the nonresident defendant's contacts with the District . . . are voluntary and deliberate or only random, fortuitous, tenuous and accidental," whether the defendant "has purposefully availed itself of the benefits and protections of the district in engaging in a business activity in the forum jurisdiction," and whether "it is fair and reasonable to expect it to anticipate being sued in that jurisdiction."  *Id.*

Because Section 13-423(a)(1) confers specific jurisdiction against a defendant, there must

---

[2] Although AGM&M also asserts that personal jurisdiction exists under D.C. Code § 13-423(a)(3) ("causing tortious injury in the District of Columbia by an act or omission in the District of Columbia"), the Court does not reach that argument because it finds that personal jurisdiction exists under section 13-423(a)(1).

be a "nexus between the plaintiff's claim and the defendant's business activities in the forum jurisdiction." *Id*. at 332. This is not a particularly high threshold; the requirement is met when the claim has "a discernible relationship to the business transacted in the District." *Trerotola v. Cotter*, 601 A.2d 60, 64 (D.C. 1991) (internal punctuation and citations omitted). A plaintiff only fails to satisfy this "discernable relationship" inquiry when his claim is "'unrelated to the acts forming the basis for personal jurisdiction.'" *Id.* (quoting *Willis v. Willis*, 655 F.2d 1333, 1336 (1981)).

In this case, Defendant's Motion to Dismiss argues that "[AGM&M] has not asserted <u>any</u> facts on which this Court's exercise of personal jurisdiction over Waters, Sr. would be appropriate . . . ." Def.'s Mot. at 8 (emphasis in original). The Court concludes otherwise. AGM&M alleges that Waters, Sr. represented it in connection with the acquisition of four properties in Washington, D.C. Second Am. Compl. ¶¶ 31, 50. AGM&M also alleges that Waters, Sr. breached his continuing fiduciary obligations to AGM&M when he subsequently assisted Waters Jr. with the filing of the MOA with the District of Columbia Recorder of Deeds concerning *the same properties*. *Id.* ¶ 51. *Cf.* [66] Mem. Op. at 9 (Feb. 5, 2009) (holding that AGM&M "ha[d] a cognizable legal claim that Cafesjian and Waters, Jr. were not acting in the best interests of AGM&M by recording the MOA . . ."). The Court has little difficulty concluding that an attorney who represents a client in connection with the acquisition of real property in the District of Columbia can reasonably be expected to face a breach of fiduciary duty claim in the District of Columbia where the claim involves the same properties that were the focus of the representation.

Defendant offers a rather opaque and qualified description of his relationship with

AGM&M, asserting that he did not "undertake any legal representation of the Plaintiff, including

but not limited to the subject matter of the above entitled action, in the District of Columbia nor

did [he] perform any service in the District of Columbia relating to the Plaintiff, including but

not limited to legal services relating to the above entitled action."  Def.'s Mot., Ex. 1 ¶ 7

(Affidavit of J. Waters, Sr.).  Waters Sr.'s statement is belied by multiple letters signed by

Waters, Sr. in connection with the acquisition of the Washington D.C. properties – including one

that he expressly signed as counsel for AGM&M, *see* Pl.'s Opp'n, Ex. 1 A-C (Letters from

Waters, Sr. to Landmark Title Corporation), and is contradicted by AGM&M's allegations that

Waters, Sr. represented it in connection with the acquisition of the properties.  *See* Second Am.

Compl. ¶¶ 31, 50.  The Court must resolve this and other factual discrepancies with regard to the

existence of personal jurisdiction in favor of AGM&M.  *See Crane*, 894 F.2d at 456.

  None of the other arguments raised by Defendant suggests a different conclusion.  For

example, Defendant lists various facts demonstrating that Waters, Sr. has substantially more

contacts with Minnesota than with the District of Columbia.  *See* Def.'s Reply at 2-3.  These

facts are largely irrelevant because the assertion of jurisdiction over a defendant pursuant to

section 423(a)(1) does not require that the District of Columbia have the *most* contacts vis a vis

another forum, or require enough contacts to predicate *general* rather than *specific* jurisdiction.

To the contrary, personal jurisdiction may be found under Section 13-423(a)(1) "even if the

defendant has not been physically present in the District," *Holder*, 779 A.2d at 772, and even if

his contacts took place through a telephone or other electronic device.  *See, e.g.*, *FC Invest. Grp.

v. Lichtenstein*, 441 F. Supp. 2d 3, 9 (D.D.C. 2006) ("[t]ransactions by telephone and facsimile

alone can, depending on the circumstances, be an adequate basis for personal jurisdiction")

(citing *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511 n.4 (D.C. Cir. 2002)).

Ultimately, the key inquiry is whether Waters, Sr.'s contacts with the District of Columbia were

"directed" toward the District and whether they had "foreseeable effects" here, such that Waters,

Sr. could reasonably be expected to litigate a matter arising out of his contacts with this

jurisdiction.  *Id.*  The Court concludes that this threshold has been met here.

Defendant also argues that "District of Columbia courts cannot assert personal

jurisdiction over individual corporate officers or directors . . . when the individuals are alleged to

have acted in their respective capacities as agents, officers, or employees of a company that has

contacts with the District of Columbia."  Def.'s Mot. at 6.  The relevance of this argument is not

entirely clear because AGM&M has not alleged that Waters, Sr. was acting as its corporate

employee or that he was acting in any official corporate capacity when he represented or

breached his fiduciary obligations to it.  *See* Pl.'s Opp'n at 9.  In Reply, Defendant does nothing

more than describe a series of cases where the defendants lacked the type of contacts present in

this litigation and then invite the Court to draw the conclusion that personal jurisdiction is

lacking in this case.  *See* Def.'s Reply at 11.  The Court is unpersuaded for the reasons described

above.  Accordingly, the Court shall deny Defendant's Motion to Dismiss Count II of the Second

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2).

B.     *Motion to Dismiss for Failure to State a Claim*

The elements of a legally cognizable breach of fiduciary duty claim are well-established.

AGM&M must allege facts sufficient to show (1) the existence of a fiduciary relationship; (2) a

breach of the duties associated with the fiduciary relationship; and (3) injuries that were

proximately caused by the breach of the fiduciary duties.  *See Paul v. Judicial Watch, Inc.*, 543 F.

Supp. 2d 1, 5-6 (D.D.C. 2008).  The Court has already determined that AGM&M has alleged

sufficient facts to state a legally cognizable breach of fiduciary duty claim in connection with the

filing of the MOA with the District of Columbia Recorder of Deeds against Cafesjian and

Waters, Jr.  *See* [66] Mem. Op. at 9 (Feb. 5, 2009).  A similar analysis applies as to Waters, Sr.

First, AGM&M argues that Waters, Sr. had fiduciary obligations arising from his former

attorney-client relationship with AGM&M.  *See* Pl.'s Opp'n at 8.  Second, AGM&M argues that

Waters, Sr. breached his fiduciary obligations by taking subsequent actions that "undercut" the

"purpose of that representation."  *Id.* at 8.  *See also id.* at 13 (citing D.C. Rule. Prof. Conduct 1.9)

("[a] lawyer who has formerly represented a client in a matter shall not thereafter represent

another person in the same or a substantially related matter in which that person's interests are

materially adverse to the interests of the former client unless the former client gives informed

consent")).  Third, AGM&M argues that Waters, Sr.'s breach caused AGM&M to incur damages

in the form of various fees and costs.  *Id.* at 16.

Although Defendant argues that "Plaintiff's [sic] have admitted in their Opposition [that]

Waters, Sr. did not represent Plaintiff," Def.'s Reply at 16, that argument is obviously

contradicted by the reality of AGM&M's allegations in the Second Amended Complaint and the

arguments in its Opposition (some of which are set forth above).  While Defendant seeks to

present his own interpretation of the events surrounding the relationship between Waters, Sr. and

AGM&M, the Court must "construe the complaint in the light most favorable to [AGM&M] and

accept the complaint's allegations as true."  *Mawalla v. Hoffman*, 569 F. Supp. 2d 253, 256

(D.D.C. 2008) (citing *Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 16-

17 (D.C. Cir. 2008)).  Finally, the D.C. Circuit recently clarified in *Tooley v. Napolitano* that

elimination of a plaintiff's claims on a motion to dismiss is disfavored where any interpretation

of the plaintiff's allegations could suggest a cognizable legal claim.  556 F.3d 836, 838-840

(D.C. Cir. 2009).  In that case, the D.C. Circuit acknowledged that the plaintiff had advanced

"thin" claims, expressed "concerns over the ultimate plausibility of [his] claims," and explained

that the "temporal link" concerning one of his claims "appear[ed] stretched nearly to the breaking

point."  *Id.*  The Court nevertheless held that the plaintiff's complaint could not be dismissed

pursuant to the "federal rules' notoriously loose pleading criteria."  *Id.* at 840.  *See also id.* at 843

(Sentelle, C.J., dissenting) (describing the plaintiff's claims as "fanciful, paranoid, or irrational

. . . based on nothing more than [his] internal belief structure").  Accordingly, the Court shall

deny Defendant's Motion to Dismiss Count II of the Second Amended Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).

## IV.  CONCLUSION

For the reasons set forth above, the Court shall DENY Defendant's [62] Motion to

Dismiss.  An appropriate Order accompanies in this Memorandum Opinion.

Date: April 15, 2009

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

11