# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE ARMENIAN ASSEMBLY OF
AMERICA, INC., *et al.*,

    Plaintiffs/Counter-Defendants,

     v.

GERARD L. CAFESJIAN, *et al.*,

    Defendants/Counter-Plaintiffs.

Civil Action Nos. 07-1259, 08-255,
08-1254 (CKK)

## PRETRIAL CONFERENCE MEMORANDUM OPINION AND ORDER
(October 22, 2010)

On October 18, 2010, the Court held a Pretrial Conference in the above-captioned consolidated actions. The Armenian Assembly of America ("the Assembly") and the Armenian Genocide Museum & Memorial, Inc. ("AGMM") (collectively, "Plaintiffs"), have filed a Consolidated Complaint against Defendants Cafesjian Family Foundation, Inc. ("CFF"), Gerard L. Cafesjian ("Cafesjian"), and John J. Waters Jr. ("Waters"). Plaintiffs allege that Cafesjian and Waters breached their fiduciary duties to AGMM and the Assembly, that Cafesjian breached his duty of good faith and fair dealing to the Assembly, and that Cafesjian and Waters misappropriated trade secrets of the Assembly. Defendants have filed a Streamlined Answer and Counterclaims alleging breaches of contract and the implied covenant of good faith and fair dealing by the Assembly and AGMM, as well as unjust enrichment and a claim for indemnification. The parties have waived their right to a jury trial, and the Court shall try these actions as the finder of fact.

On September 27, 2010, the parties filed their Joint Pretrial Statement setting forth their

claims and defenses, witnesses, exhibits, deposition designations, itemization of damages and other relief, and other information relevant to the preparation of trial. Prior to the Pretrial Conference, the parties filed their respective objections to the Pretrial Statement, to which the parties each filed responses and replies. Plaintiffs have also filed motions *in limine* to exclude the expert testimony and report of both James C. Howard and Robert M. Krasne. Defendants have filed a Motion *In Limine* to Strike Plaintiffs' Damage Claims. These motions were fully briefed prior to the Pretrial Conference. The Court discussed these motions and objections and made various rulings on the record during the Pretrial Conference. This Memorandum Opinion and Order is intended to review and summarize those discussions and the rulings made on the record, and they are hereby incorporated and made a part of this order. The Court's rulings are based on the grounds set forth by the parties in their papers and during the Pretrial Conference.

## DISCUSSION

A.   *Testimony of Gerard Cafesjian in Plaintiffs' Case-in-Chief*

Plaintiffs seek to call Defendant Cafesjian to testify as a witness during their case-in-chief.[1] However, Cafesjian is not willing to appear voluntarily during Plaintiffs' case, and Plaintiffs are unable to subpoena him because he remains outside the subpoena power of this Court, which is limited to the District of Columbia and the area within 100 miles of the federal courthouse where this Court sits. *See* Fed. R. Civ. P. 45(b)(2) (stating that a subpoena may be served within the district of the issuing court or outside that district but within 100 miles of the place specified for trial). Cafesjian is planning to appear voluntarily to testify during Defendants'

---

[1] Plaintiffs also seek to call Defendant John Waters Jr. as a witness, and Defendants have indicated that he will be made available to testify during Plaintiffs' case-in-chief.

case-in-chief. However, his appearance will not occur until after Plaintiffs have rested their case. Therefore, Plaintiffs will be unable to subpoena Cafesjian in time for him to give testimony during their case-in-chief. During the Pretrial Conference, the Court asked whether the parties could come to an agreement that would enable Cafesjian, who is elderly and not planning to attend the entirety of the trial, to testify during Plaintiffs' case. The parties were unable to come to any agreement.

Plaintiffs contend, however, that Cafesjian may be compelled to testify by subpoena because he is a party witness, and they argue that Rule 45 does not protect party witnesses from having to travel to this forum to give testimony. Plaintiffs cite to decisions from a number of courts interpreting Rule 45 so as to permit the service of a subpoena on a party witness beyond the 100-mile radius of the court. *See, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. M21-88, 2009 WL 1840882, at *1 (S.D.N.Y. June 24, 2009) (allowing service of trial subpoenas on corporate defendant's officers outside the territorial limits of Rule 45(b)(2)); *In re Ames Dep't Stores, Inc.*, No. 01-42217, 2004 WL 1661983, at *1-*2 (Bankr. S.D.N.Y. June 25, 2004); *Am. Fed'n of Gov't Employees Local 922 v. Ashcroft*, 354 F. Supp. 2d 909, 915 (E.D. Ark. 2003). These courts rely on the 1991 amendments to Rule 45, which added present paragraph 45(c) regarding the protections for witnesses served with a subpoena. Rule 45(c)(3)(A)(ii) provides that a court must quash or modify a subpoena that "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person—except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held." Rule 45(c)(3)(B)(iii) provides that the issuing court may,

3

on motion, quash or modify a subpoena if it requires "a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial." These courts hold that because the restriction in subparagraph (c)(3)(A)(ii) applies only to nonparty witnesses, courts should draw an inverse inference and conclude that party witnesses may be subpoenaed beyond the territorial limits of subparagraph (b)(2). *See In re Vioxx Prods. Liab. Litig.*, 438 F. Supp. 2d 664, 666-67 (E.D. La. 2006). This appears to be the conclusion of the majority of courts that have addressed this issue. *See id.* at 666 (citing cases).

However, an increasing number of courts have questioned the wisdom of this interpretation. *See Iorio v. Allianz Life Ins. Co.*, No. 05cv633, 2009 WL 3415689 (S.D. Cal. Oct. 21, 2009); *Dolezal v. Fritch*, No. CV-08-1362-PHX-DGC, 2009 WL 764542 (D. Ariz. Mar. 24, 2009); *Chao v. Tyson Foods, Inc.*, 255 F.R.D. 556 (N.D. Ala. 2009); *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 733 (E.D. Wis. 2008); *Johnson v. Big Lots Stores, Inc.*, 251 F.R.D. 213 (E.D. La. 2008); *Jamsport Entm't, LLC v. Paradama Prods., Inc.*, No. 02 C 2298, 2005 WL 14917, at *1-*2 (N.D. Ill. Jan. 3, 2005); *Johnson v. Land O'Lakes, Inc.*, 181 F.R.D. 388 (N.D. Iowa 1998). There is no controlling precedent in this jurisdiction, and only one court in this district appears to have considered this question. In *Mazloum v. District of Columbia Metropolitan Police Department*, 248 F.R.D. 725 (D.D.C. 2008), Judge John D. Bates criticized the majority view of Rule 45 as contrary to the text of the rule:

> To begin with, based simply on the text of Rule 45(b)(2) it would seem that Rule 45(c)(3)(A)(ii) functions as a *limitation* on the scope of Rule 45(b)(2)(B) rather than an expansion of authority. In relevant part, Rule 45(b)(2) states: "*Subject to* Rule 45(c)(3)(A)(ii), a subpoena may be served at any place . . ." The phrase "subject to," of course, commonly refers to a constraint, and there is no reason to believe that it does not do so here. The majority position, however, appears to interpret that phrase as if it read: "*In addition to the provisions* of Rule 45(c)(3)(A)(ii), a subpoena may

be served at any place . . ." That is an odd construction.

248 F.R.D. at 728. However, Judge Bates did not make a ruling with respect to the scope of Rule 45 as applied to party witnesses because it was not an issue properly presented to him. The issue is properly presented here, however, since Plaintiffs have indicated that they intend to subpoena Cafesjian to testify. Therefore, the Court must determine whether Rule 45 allows for the service of a trial subpoena on a party witness who is not within the territorial limitations of the Court's subpoena power as defined by Rule 45(b)(2).

Based on a careful consideration of the decisions of the various courts to address this issue, this Court agrees with the "minority" view that Rule 45 does not permit service of a trial subpoena on a party witness who is beyond the limits of Rule 45(b)(2). The plain language of Rule 45(b)(2) is simple and unambiguous:

> ***Service in the United States.*** Subject to Rule 45(c)(3)(A)(ii), a subpoena may be served at any place:
>
> (A)    within the district of the issuing court;
> (B)    outside that district but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection;
> (C)    within the state of the issuing court if a state statute or court rule allows service at that place of a subpoena issued by a state court of general jurisdiction sitting in the place specified for the deposition, hearing, trial, production, or inspection; or
> (D)    that the court authorizes on motion and for good cause, if a federal statute so provides.

Fed. R. Civ. P. 45(b)(2). The language "Subject to Rule 45(c)(3)(A)(ii)" indicates that although the court's subpoena power extends to those areas described in subparagraphs (A) through (D), a subpoena must be quashed if it "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts

business in person—except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held." Fed. R. Civ. P. 45(c)(3)(A)(ii). In other words, Rule 45(c)(3)(A)(ii) protects nonparty witnesses from having to travel more than 100 miles from where they reside or normally conduct business. The fact that it does not confer the same protections on party witnesses does not mean, however, that Rule 45(c)(3)(A)(ii) was intended *sub silentio* to expand the territorial reach of the courts' subpoena power over party witnesses. *See Chao v. Tyson Foods*, 255 F.R.D. at 559 ("It is . . . too tenuous an inference to conclude that because a court is not required to *quash* a subpoena issued to a party or a party's officer under Rule 45(c)(3)(A)(ii), it therefore has the power to *compel* the attendance of a party witness who was served beyond the explicit geographical limitations of Rule 45(b)(2) and that *service* of a subpoena is valid on a nationwide basis whenever the person served is a party or the officer of a party."); *Johnson v. Big Lots Stores*, 251 F.R.D. at 216 ("The phrase 'subject to' ordinarily operates to limit a power or right, not expand it."). Such a construction would effectively create nationwide subpoena service over party witnesses, which would be a dramatic change from the history of federal courts' subpoena power. *See Vioxx*, 438 F. Supp. 2d at 667-68 (discussing the history of territorial restrictions on courts' subpoena power). This Court agrees with the court in *Johnson v. Big Lots Stores, Inc.*, that Rule 45(c)(3)(A)(ii) was not intended to effect such a change. *See* 251 F.R.D. at 219-22.

It is true that Rule 45(c)(3)(A)(ii) does not protect a party witness from having to travel more than 100 miles—or even all the way across the country—for trial. A party witness who is *properly served* with a trial subpoena is not entitled to have that subpoena quashed on the ground that it requires long-distance travel, unless such travel would amount to an undue burden or one

of the other bases for quashing a subpoena under Rule 45(c)(3)(A). However, the party witness cannot be properly served unless he or she is served within the territorial limits of Rule 45(b)(2). Therefore, unlike a nonparty witness, a party witness may be served with a subpoena while temporarily in the district and commanded to appear notwithstanding the fact that he or she resides, is employed, or regularly transacts business in person more than 100 miles away in a different state. That is the most logical way to harmonize the language of subparagraphs (b)(2) and (c)(3)(A)(ii) of Rule 45. The "majority" interpretation erroneously elides the distinction between the limitations on service in 45(b)(2) and the limitations on enforcement for nonparty witnesses in 45(c)(3)(A)(ii). *See, e.g.*, *Creative Sci. Sys., Inc. v. Forex Capital Markets, LLC*, No. C 04-3746, 2006 WL 3826730 (N.D. Cal. Dec. 27, 2006) (arguing that the minority view renders subparagraph (c)(3)(A)(ii) "pure surplusage"). In addition, the "majority" interpretation is in tension with the "unavailable witness" rule for the use of depositions at trial, which provides that "[a] party may use for any purpose the deposition of a witness, *whether or not a party*, if the court finds . . . that the witness is more than 100 miles from the place of hearing or trial." Fed. R. Civ. P. 32(a)(4)(B) (emphasis added). If party witnesses could so easily be subpoenaed to testify, the Federal Rules would not consider them to be "unavailable" in such circumstances.

Therefore, the Court finds that Plaintiffs cannot compel Cafesjian to give live testimony during their case-in-chief unless they properly serve him with a trial subpoena while he is within the geographic limits of this Court's subpoena power. However, Plaintiffs will be permitted to use Cafesjian's deposition pursuant to Rule 32(a)(4), and Plaintiffs have appropriately designated excerpts of his deposition testimony in their Pretrial Statement. The Court also notes that Cafesjian will be testifying during Defendants' case, and Plaintiffs will have the opportunity to

7

cross-examine him at that time. During the Pretrial Conference, the Court asked Plaintiffs what additional questions they would ask Cafesjian that could not be admitted through his deposition testimony, but they did not specifically identify what additional evidence they seek to have admitted in their case-in-chief. Therefore, Plaintiffs have not provided the Court with any reason to consider altering the order of proof so as to enable Plaintiffs to directly examine Cafesjian after he gives testimony during Defendants' case. Plaintiffs should be prepared to present their case without live testimony from Cafesjian.

> B.  *Plaintiffs' Objections to Defendants' Exhibits*

Plaintiffs have asserted objections to several of Defendants' exhibits, which the Court shall address below.

> 1.  <u>Defendants' Exhibit 4 (Hovnanian Grant Agreement)</u>

Plaintiffs object to the admission of Defendants' Exhibit 4, which appears to be an agreement between the Assembly and Hirair Hovnanian, one of the witnesses who will testify at trial. Plaintiffs purportedly object to the authenticity of the exhibit, but they concede that Mr. Hovnanian will testify that he recognizes his signature on the document. Defendants indicate that they will seek to admit this document to show that the Assembly made agreements with donors that included reversionary clauses. Plaintiffs dispute this interpretation of the exhibit, arguing that Mr. Hovnanian did not sign the agreement as a donor, and therefore there was no binding agreement with him. However, it is clear to the Court that Plaintiffs' objection goes to the weight of the exhibit rather than its authenticity. Therefore, the Court shall overrule Plaintiffs' objection as to the authenticity of Defendants' Exhibit 4.

2.        Defendants' Exhibits 144, 146

Plaintiffs object to Defendants' Exhibits 144 and 146, which are letters sent between Plaintiffs' counsel and Defendants' counsel involving settlement negotiations in March and April 2007, prior to Defendants' filing of a lawsuit in the District of Minnesota.  Plaintiffs move to exclude these exhibits under Federal Rule of Evidence 408 on the ground that they constitute "conduct or statements made in compromise negotiations regarding the claim."  Defendants argue that these exhibits are not being offered to prove liability for a claim but rather to explain Defendants' motivation for and good faith in filing the Minnesota lawsuit and to prove that Plaintiffs were aware of Cafesjian's litigating position prior to the filing of the lawsuit, which are contested issues in this litigation.  *See* Pls.' Consol. Compl. ¶¶ 209-22, 298(b).  Rule 408 does not prohibit evidence of statements made in compromise negotiations if not offered to prove liability.  *See* Fed. R. Evid. 408(b).  Plaintiffs concede that the last three paragraphs of Exhibit 146 are relevant to the issue of notice and will stipulate to their admission.  However, Defendants seek to admit the exhibits in their entirety.  The Court agrees with Defendants that at least parts of these exhibits are admissible to show the litigation position that was taken by Plaintiffs that may have prompted Defendants to file a lawsuit.  Because that is a contested issue in this case, Rule 408 does not bar their admission for this purpose.  *See* Fed. R. Evid. 408, advisory comm. note (2006 Amendment) (explaining that Rule 408 does not bar evidence admitted to prove bad faith or notice).  The Court will, however, limit its consideration of these exhibits to the particular paragraphs or sentences which are relevant for this purpose.

3.        Defendants' Exhibits 259 and 166 (Informal Counsel Correspondence)

Plaintiffs object to Defendants' Exhibit 259, which is an email from Plaintiffs' counsel to

Defendants' counsel sent on September 2, 2010, explaining which specific acts of self-dealing are alleged by Plaintiffs to have been committed by Defendants. During the Pretrial Conference, Defendants explained that they sought to use this email to help prepare their expert witness to rebut Plaintiffs' claims. The Court ruled that Defendants may use the email for that purpose, but it should not be admitted at trial as an exhibit, and Defendants' expert's testimony should be based on the evidence actually presented at trial rather than on this particular email. Therefore, the Court shall sustain Plaintiffs' objection to Defendants' Exhibit 259.

Plaintiffs also objected to Defendants' Exhibit 166, which is also correspondence between counsel. Because Defendants failed to address this in their opposition papers, the Court shall sustain this objection as conceded.

4.     Defendants' Exhibit 258 (Legal Bills)

Plaintiffs object to Defendants' Exhibit 258, which is a summary chart of legal fees for which Defendants seek indemnification. Plaintiffs indicated that they are working with Defendants to obtain the supporting documentation for this exhibit and will withdraw their objection.

C.     *Defendants' Objections to Plaintiffs' Witnesses*

1.     Rule 701 Opinion Testimony

In their objections to the Pretrial Statement, Defendants object to the testimony of Tanja Castro, Patrick Gallagher, Gary Martinez, Emily Eig, and Norman Glasgow on the ground that these witnesses will be offering expert testimony under Rule 702 that was not disclosed before trial as required by Rule 26(a)(2)(A). Plaintiffs argue that these witnesses will be offering lay opinion testimony governed by Rule 701 and therefore their testimony is admissible.

According to Rule 701, "[i]f the witness is not testifying as an expert, the witness'
testimony in the form of opinions or inferences is limited to those opinions or inferences which
are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of
the witness' testimony or the determination of a fact in issue, and (c) *not based on scientific,
technical, or other specialized knowledge within the scope of Rule 702*."  The Advisory
Committee Notes make clear that "any part of a witness' testimony that is based on scientific,
technical, or other specialized knowledge within the scope of Rule 702 is governed by the
standards of Rule 702 and the corresponding disclosure requirements of the Civil . . . Rules."
Fed. R. Evid. 701 advisory comm. note.  Therefore, a lay witness who is not qualified as an
expert may not give opinions that are based on his or her specialized knowledge, even if those
opinions were also based on his or her personal knowledge.  If the witness' testimony "results
from a process of reasoning which can be mastered only by specialists in the field," it is expert
testimony that must be disclosed before trial.  *See id.*

Plaintiffs cite *Williams Enterprises, Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230 (D.C.
Cir. 1991), for the proposition that a witness may offer lay opinions based on personal
knowledge even if those opinions also involve specialized expertise.  However, that case dealt
with Rule 701 prior to the 2000 amendments, which clarified that any testimony involving
specialized knowledge is governed by Rule 702.  Another case cited by Plaintiffs—*In re NETtel
Corp.*, 369 B.R. 50, 65 (Bankr. D.C. 2007)—relied primarily on *Williams Enterprises*.  In the
third case cited by Plaintiffs, *United States v. Eiland*, Crim. No. 04-379, 2006 WL 2844921
(D.D.C. Oct. 2, 2006), Judge Royce C. Lamberth held that testimony regarding the meaning of
code words in narcotics situations qualified as lay opinion where the foundation for such

testimony is limited to the knowledge of the facts surrounding the case at issue. *See also United States v. Wilson*, 605 F.3d 985, 1025 (D.C. Cir. 2010) ("A witness with firsthand experience of a particular drug operation may testify under Rule 701."). That decision merely illustrates the distinction between expert opinion testimony based on specialized knowledge and lay opinion testimony, which is "the product of reasoning processes familiar to the average person in everyday life." *Wilson*, 605 F.3d at 1025 (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)). The Court also notes that in both *Eiland* and *Wilson*, the specialized knowledge at issue was gained through experience rather than through scientific or technical training, and therefore it was possible for the witness to testify based solely on personal experience with the case at issue, unlike a doctor who would utilize his expertise each time he treats a patient.

Therefore, the Court shall exclude Plaintiffs' witnesses from giving opinions based on their specialized knowledge or expertise. To the extent that their opinions are not based on specialized knowledge, they may be admitted.

### 2. Lack of Recollection During Deposition

Defendants also object to the testimony of Hirair Hovnanian and Robert Kaloosdian on the basis that their testimony was not disclosed during discovery because these witnesses expressed a lack of recollection about key events during their depositions. This, however, is not a basis for striking their testimony. Rather, Defendants may use these witnesses' lack of recollection to impeach them at trial.

### 3. Representative from Chaney & Associates, Inc.

Defendants object to the testimony of a representative from Chaney & Associates, Inc., whom Plaintiffs state will testify regarding an appraisal of the Properties performed in 2007.

During the Pretrial Conference, Plaintiffs conceded that this witness would be testifying as an expert. However, Plaintiffs failed to designate any witnesses as experts during discovery. Accordingly, the Court sustained Defendants' objection to this witness's testimony.

4.     Representative from the Office of Tax & Revenue

Defendants object to the testimony of a recordkeeper from the D.C. Office of Tax and Revenue, whose testimony Plaintiffs offer for the purpose of authenticating public tax assessment records pursuant to Fed. R. Evid. 1005. However, it is clear that Defendants' objection is not based on authenticity, but rather on the meaning of the tax assessment records as establishing the valuation of the properties at issue. The Court agrees with Defendants that tax assessment records alone are unlikely to establish the fair market value of a property. However, that does not preclude Plaintiffs from presenting the testimony of an authenticating witness. The Court notes that such testimony may be unnecessary if the proper custodian can certify the records, making them self-authenticating under Fed. R. Evid. 902(4).

D.     *Plaintiffs' Motions* in Limine *to Exclude Testimony of Defendants' Experts*

Plaintiffs have filed motions *in limine* to exclude the testimony of two witnesses designated as experts by Defendants, Robert M. Krasne and James C. Howard. The Court indicated during the Pretrial Conference that it would not exclude the testimony of these witnesses prior to trial, as it appears that they are qualified to give opinions about at least some issues that would be helpful to the Court as finder of fact. Therefore, the Court shall defer until trial any rulings as to these witnesses' qualifications or methodologies.

E.     *Defendants' Objections to Plaintiffs' Damage Claims*

Defendants have filed a Motion *in Limine* to Strike Plaintiffs' Damage Claims.

Defendants move to strike nine categories of damages asserted by Plaintiffs based on a failure to disclose during discovery, lack of foundation, or other defect.  The Federal Rules of Civil Procedure require that a party, as part of its initial disclosures in discovery, provide to all other parties

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(A)(iii).  Rule 26(e) imposes a continuing obligation to supplement or correct a disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The sanction of preclusion is "automatic and mandatory" unless the party can show that the failure to disclose was "either substantially justified or harmless."  *Walls v. Paulson*, 250 F.R.D. 48, 53-54 (D.D.C. 2008) (quoting *Elion v. Jackson*, 544 F. Supp. 2d 1, 5-6 (D.D.C. 2008)).

The Court shall address each of the damages claims asserted.

1.     Lost or Delayed Donations

Plaintiffs claim that they have suffered the following damages: (1) lost or delayed donation from H. Mangurian ($11,857,534 lost, $1,857,534 delayed); (2) lost or delayed donation

from P. Vosbikian ($1,120,493 lost, $120,493 delayed); and (3) the potential loss of donation from S. Chitjian ($1,000,000).  Defendants do not dispute that they were aware of Plaintiffs' claims for lost or delayed damages during discovery, and therefore they do not seek to strike them on the basis of nondisclosure.  *See* Pl.'s Reply at 8.  However, Defendants argue that there is no factual basis for Plaintiffs' claims that donations were "lost" because none of Plaintiff's witnesses will testify that they will not make donations after this litigation is over.  Defendants also argue that Plaintiffs failed to disclose Dr. Sarkis Kechejian as a damages witness and therefore his testimony regarding damages should be excluded.

In asserting that there is no factual basis for Plaintiffs' claim of damages for "lost donations," Defendants rely primarily on *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227 (D.C. Cir. 1997), a Fair Housing Act case in which the court reversed a damages award for lost contributions.  The *Samaritan Inns* court began its analysis by explaining that there is "no principled basis on which to conclude that a nonprofit corporation . . . may not recover contributions lost or delayed as a result of the [defendant's] unlawful interference with its activities if such interference was the proximate cause of the loss."  114 F.3d at 1234.  The court then explained that the standard of proof for recovering such damages is governed by the principles applicable to the recovery of damages for lost profits.  *Id.*  "Thus, while a plaintiff seeking to recover lost profits must ordinarily prove the fact of injury with reasonable certainty, proof of the amount of damages may be based on a reasonable estimate."  *Id.* at 1235.  The *Samaritan Inns* court held that the record did not establish to a reasonable certainty that damages were "lost" rather than merely "delayed" because the donations at issue were not part of an annual giving campaign, but rather a capital campaign of limited duration.  *See id.* at 1236.

Therefore, the court held that the plaintiff could recover only the diminished value of the delayed donations. The court noted, however, that a charitable organization could recover damages for lost contributions by presenting evidence that particular contributors who might otherwise have made contributions were unwilling to do so as a result of a defendant's conduct. *See id.* at 1237. Therefore, *Samaritan Inns* does not bar Plaintiffs from presenting testimony from contributors regarding what donations would have been made but for Defendants' conduct.

Defendants argue that, as in *Samaritan Inns*, the record cannot support a finding of lost contributions. However, this argument is premature because Plaintiffs' witnesses have not testified regarding their intentions, and therefore there is not a complete record on which to evaluate Defendants' motion to strike. By contrast, the *Samaritan Inns* court was reviewing the district court's award of damages after a trial. Whether damages may qualify as "lost" or "delayed" depends upon this Court's determination (as finder of fact) as to the donors' specific intent regarding their donations to Plaintiffs. The Court cannot make such determinations based on vague proffers as to the testimony of donors, and it is not economical to require Plaintiffs to provide a more detailed proffer prior to trial for the purpose of distinguishing between "lost" and "delayed" donations. Therefore, the Court shall DENY without prejudice Plaintiffs' motion to strike Plaintiffs' claims for lost damages.

With respect to the testimony of Dr. Kechejian, Defendants raise this issue for the first time in their reply brief, and therefore Plaintiffs did not address this issue in their opposition to Defendants' motion *in limine*. Defendants object to his testimony on the ground that Plaintiffs failed to indicate that he would testify about lost or delayed donations during discovery. However, Defendants concede that they were aware that Dr. Kechejian might be a possible

witness. Therefore, the Court ruled that Dr. Kechejian may testify at trial. The Court notes, however, that lost donations from Dr. Kechejian are not listed on Plaintiffs' itemization of damages in the Pretrial Statement. Therefore, Plaintiffs cannot recover damages based on any lost or delayed donations from Dr. Kechejian, and any testimony he gives regarding his intent to donate to the museum is inadmissible unless it is relevant for some other purpose.

2.     Taxes Paid Since October 2006

Plaintiffs seek to recover "[t]axes paid since October 2006 on the properties in their entirety as a result of Defendants' failure to complete the project and occupy the properties so as to secure an exemption or to get a legislative exemption," an amount asserted to be $1,878,061. Defendants argue that this damages claim should be stricken for three reasons: (1) it was Plaintiffs, not Defendants, who failed to secure a tax exemption; (2) Plaintiffs cannot prove that AGMM would have qualified for a tax exemption because establishing that fact requires expert testimony which they have not designated; and (3) any testimony that AGMM should have been awarded a "legislative exemption" is purely speculative.

To the extent that Defendants are seeking to strike Plaintiffs' damages on the ground that the record at trial will not establish a causal connection between Defendants' actions and the damages at issue, their motion is not the proper subject of a motion *in limine*. *See C & E Servs., Inc. v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008) ("[A] motion *in limine* should not be used to resolve factual disputes or weigh evidence."). Defendants argue that the record clearly will show that it was Plaintiffs, not Defendants, who failed to respond to the D.C. government's inquiries regarding a tax exemption, and this is the reason that there was no tax exemption. This is a disputed issue of fact for trial, and the Court shall not attempt to resolve it in the context of a

motion *in limine*.

With respect to the issue of expert testimony, the parties disagree as to whether expert testimony is required under D.C. law to establish that AGMM would have obtained a tax exemption had Defendants not breached their duty to Plaintiffs. The D.C. Court of Appeals has explained that "when the subject dealt with is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman, its clarification calls for the use of expert testimony." *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C. 1978). During the Pretrial Conference, the Court asked Plaintiffs how they intended to establish that AGMM would have obtained a tax exemption without relying on expert testimony. Plaintiffs indicated that they believed they could establish that under D.C. law, no tax exemption could have been obtained without first providing a certificate of occupancy, which Plaintiffs believe they can prove they would have obtained but for Defendants' conduct. The Court is skeptical that Plaintiffs can meet their burden of proof without an expert, but the Court shall allow Plaintiffs to make their case at trial.

To the extent that Plaintiffs are seeking damages based on the D.C. Council's failure to grant a legislative tax exemption for AGMM, their claim cannot succeed at trial. To prove their claim, Plaintiffs would need to present opinion testimony that the D.C. Council would have granted such an exemption if such a request had been properly presented to it. Such opinion testimony would either be speculative (and therefore inadmissible) or based on specialized knowledge about the D.C. Council and its operations (and therefore expert testimony under Federal Rule of Evidence 702). Because Plaintiffs have not designated any expert to testify about such matters, they cannot prevail on their claim for taxes based on the lack of a legislative

exemption.  Therefore, the Court GRANTS Defendants' motion to strike this damages claim.

 3. Future Taxes Owed

Plaintiffs seek to recover "[f]uture taxes to be paid on the properties in their entirety at the vacant and/or blighted rates as a result of Defendants' failure to demolish the properties or fulfill the goal of occupancy before they abandoned the project."  Defendants argue that these damages should be stricken because (1) this theory was never disclosed in discovery; (2) it requires expert testimony which was not designated; and (3) any testimony regarding "future" taxes are speculative because no one knows what the effective tax rate will be in future years.

With respect to disclosure during discovery, Plaintiffs assert that this theory of damages was adequately disclosed during discovery because Plaintiffs identified "Increased Taxes" as a category of damages in their answers to Defendants' interrogatories.  In addition, Mr. Van Krikorian testified about the higher tax rates on the properties during his deposition.  Defendants do not dispute that they were aware that Plaintiffs were claiming "increased taxes" as damages but argue that Plaintiffs never explained that this category of damages would include *future* taxes owed as a result of Defendants' actions.  The Court is not convinced by Defendants' distinction between taxes owed leading up to the date of judgment in this case and taxes that will be owed after the date of judgment.  All of these taxes were "future taxes" at one point in time, and if Plaintiffs can establish to a reasonable certainty that it would owe higher taxes going forward as a result of Defendants' actions, those damages are recoverable.  The Court shall not strike these damages on the basis of failure to disclose during discovery.

With respect to the need for expert testimony to establish future tax liability, Plaintiffs argue that no expert testimony is needed because information such as tax rates and tax

assessments are matters of fact that can be introduced through fact witnesses and public records. Defendants argue, however, that expert testimony is required to establish causation, i.e., that the Properties would have been occupied or demolished but for Defendants' conduct. After discussing this issue during the Pretrial Conference, it is unclear to the Court how Plaintiffs will establish liability for future taxes owed without expert testimony. However, the Court shall allow Plaintiffs to present their best case during the trial. Therefore, the Court denies without prejudice Defendants' motion to strike this damages claim.

4. <u>Increased Design & Construction Costs</u>

Plaintiffs seek to recover damages for the increased cost of design and construction services for the museum. Plaintiffs explain that this theory of damages relies on testimony by Gary Martinez, Patrick Gallagher, and Sean Regan, the museum's current architect, planner, and project manager, respectively, that the amount they will charge for their services is now higher than it would have been approximately seven years ago. *See* Pls.' Opp'n to Mot. *in Limine* at 17-18. Defendants argue that this theory of damages should be stricken because it was not disclosed during discovery and relies on expert opinion. Plaintiffs dispute Defendants' assertion that expert testimony is required to establish these damages, noting that the rates charged by these professionals are matters of fact for which no specialized knowledge is required. The Court is not convinced that expert testimony is critical to this damages claim, and therefore the Court would not strike this claim on those grounds.

Plaintiffs argue that they disclosed this theory of damages during discovery because they included "[d]amages associated with the delay in development of the Museum" in their answers to Defendants' interrogatories. Defendants point out, however, that Plaintiffs refused to quantify

20

those damages in its interrogatory responses, and it did not provide a computation of such damages as required in its initial disclosures.  Indeed, Plaintiffs have still not quantified these damages, arguing that they are not quantifiable because the date when these professional services will be provided is still unknown.  Plaintiffs argue that such damages are recoverable because they will rely on a "reasonable assumption" regarding when the museum project will be relaunched and completed.  *See* Pls.' Opp'n to Mot. *in Limine* at 18.  But Plaintiffs have not provided Defendants with a computation of what it believes its damages would be, based on such a "reasonable assumption."  The category of damages asserted by Plaintiffs—damages associated with the delay in the development of the museum—is extremely broad, and Plaintiffs had an obligation to disclose a computation for this category of damages so as to put Defendants on notice as to precisely what damages they were claiming.  Without that required disclosure, Defendants had no meaningful way of preparing to rebut the testimony now proffered by Plaintiffs to support this theory.  In fact, Defendants contend that if they had been aware that Plaintiffs were seeking this type of damages, they would have conducted discovery into the relative cost of professional services and designated experts to testify that costs have actually fallen rather than increased.  *See* Defs.' Reply at 10.

Plaintiffs argue that it was Defendants' obligation to compel more specific discovery responses if it did not understand Plaintiffs' theory of damages associated with the delay in the development of the museum.  However, the record shows that Plaintiffs have largely rebuffed Defendants' attempts to learn more about Plaintiffs' damages theories.  For example, when Defendants asked Rouben Adalian, AGMM's Executive Director, about damages during his deposition, Plaintiffs' counsel instructed him not to answer on the grounds that he had no

knowledge of damages and that AGMM's Rule 30(b)(6) witness would testify about damages. *See* Defs.' Mot. *in Limine*, Ex. 1 (Adalian Dep.) at 369. The Court subsequently granted Defendants' motion to compel Mr. Adalian to testify regarding issues of damages, *see* Order (May 7, 2009), and in his subsequent re-deposition, Mr. Adalian was unable to answer most of Defendants' questions about damages. *See* Defs.' Mot. *in Limine*, Ex. 1 (Adalian Dep.) at 405-06. When Defendants asked Van Krikorian, AGMM's Rule 30(b)(6) witness, about damages associated with delay during his deposition, he identified damages from the enforcement of the reversionary interest, damage to the reputation of individuals and the organization, and lost financial and cultural contributions. *See* Defs.' Opp'n to Pls.' Mot. for Summ. J., Ex. M (Krikorian 30(b)(6) Dep.) at 184-86. Mr. Krikorian did not mention the increased cost of professional services, but he did say that additional information regarding damages associated with delay may be provided by a damages expert. *See* Defs.' Mot. *in Limine*, Ex. 4 (Krikorian 30(b)(6) Dep.) at 187. However, no such expert was designated.

Defendants cannot be faulted for failing to compel Plaintiffs during the discovery period to produce more specific evidence about a type of damages that was not explained to them in Plaintiffs' initial disclosures, in Plaintiffs' responses to their interrogatories, or in Plaintiffs' answers to Defendants' questions at their depositions. Rule 26(a)(1)(A)(iii) required Plaintiffs to provide, at the outset of discovery, a computation of each category of damages it claimed, and Rule 26(e) required Plaintiffs to supplement its disclosures in a timely manner once it learned that they were incomplete. However, Plaintiffs have never disclosed a computation of damages under its "increased costs" theory, and they did not even explain the nature of this theory until ordered by this Court to make pretrial disclosures. Plaintiffs have failed to show that their failure

to make an earlier disclosure was substantially justified or harmless, and therefore the Court must preclude Plaintiffs from seeking these damages. *See* Fed. R. Civ. P. 37(c)(1). Accordingly, the Court shall GRANT Defendants' motion to strike with respect to Plaintiffs' asserted damages for "increased design and construction costs for hired professionals."

> 5. <u>Return of Anoush Mathevosian's Donation</u>

Plaintiffs assert various "alternative" damage theories associated with any decision that the properties must revert to Cafesjian and/or the Cafesjian Family Foundation. The first of these asserted damages is the $3.5 million that was donated by Anoush Mathevosian to Plaintiffs for the purpose of purchasing the Bank building (now worth $5,776,630, according to Plaintiffs). Defendants argue that this claim should be stricken because (1) it was not disclosed during discovery; (2) Plaintiffs lack standing to sue for damages to Ms. Mathevosian; and (3) such a claim is barred by the statute of limitations. To the extent that Plaintiffs failed to disclose this theory of damages during discovery, that failure is harmless because Defendants were clearly aware of Ms. Mathevosian's donation and the fact that it would be lost to Plaintiffs if the properties revert to Cafesjian. The Court is also not persuaded that Plaintiffs lack standing to assert such a claim, since the museum is claiming a loss on its own behalf, not on behalf of Ms. Mathevosian. With respect to the statute of limitations, the parties have not addressed this issue sufficiently in their briefing to enable the Court to make a ruling. Because this is an alternative damage theory that will only be asserted in the event the Court finds a breach of duty by Defendants and finds that the Properties should revert to Cafesjian, the Court shall defer any decision on this issue until after the trial.

6.     Carrying Costs Paid to TomKat & Carrying Costs on the Properties

Plaintiffs' next "alternative" damages claim is for $1,330,085.40 in "carrying/other costs paid to TomKat upon acquisition of the Adjacent Properties" and for $3,262,456 in "carrying costs paid by AGMM on the properties since acquisition in 2003 to present, including taxes and insurance." Plaintiffs argue that if the Court rules that the Adjacent Properties must revert to Defendants, it would be inequitable for Defendants to keep the Properties without reimbursing Plaintiffs for the costs of carrying the Properties in the interim. Defendants move to strike these damages claims on the grounds that (1) Plaintiffs failed to disclose them during discovery and (2) there is no legal basis for recovering carrying costs.

As to the issue of disclosure during discovery, Defendants concede that Plaintiffs disclosed "Carrying costs on Properties (inclusive of increased insurance costs and taxes)" as one category of damages being claimed. Although Defendants argue that Plaintiffs' current "carrying costs" theory of damages is different than what was originally asserted, the Court is not persuaded that Plaintiffs failed to disclose their theory of damages such that they should be precluded from presenting evidence on this theory. As the Court understands it, Plaintiffs are seeking to ensure that if the Court finds that Defendants breached their fiduciary duties to Plaintiffs but also finds that the Properties should revert to Defendants, Defendants would be ordered to reimburse Plaintiffs for the carrying costs they paid to keep the Properties since they were acquired. Although it is unclear whether Plaintiffs would be entitled to such an award, Plaintiffs' argument is based on equity, and it is premature at this time to consider it. Therefore, the Court shall deny without prejudice Defendants' motion to strike these alternative damages and reconsider these arguments after trial.

24

7.     Appreciated Value of the Grant Properties

Plaintiffs' final alternative damages claim is for the appreciated value of the Properties, estimated by Plaintiffs to be $6,840,000. As with carrying costs, Plaintiffs argue that it would be inequitable for Defendants to receive the Properties without disgorging their appreciated value. Defendants argue that this claim should be stricken because (1) it was not disclosed during discovery and (2) it relies on expert testimony which has not been designated. Plaintiffs do not dispute that this damages theory was not listed among its initial disclosures or its responses to Defendants' interrogatories, but Plaintiffs argue that this theory was disclosed in the deposition testimony of Van Krikorian. *See* Pls.' Opp'n to Mot. *in Limine* at 11-13. However, the excerpts of Mr. Krikorian's testimony cited by Plaintiffs demonstrate only that Plaintiffs were concerned about legal problems that would arise if Plaintiffs returned the Properties to Cafesjian after they had appreciated in value. That testimony would not have put Defendants on notice that they were seeking the appreciated value of the Properties as damages if the Properties reverted to Cafesjian. Defendants indicated during the Pretrial Conference that had they been aware of this alternative claim, they would have sought an expert to testify about the value of the Properties.

Defendants also argue that Plaintiffs cannot establish the appreciated value of the Properties without expert testimony. Plaintiffs disagree, citing tax records for the Properties and the most recent tax assessments by the D.C. Office of Tax and Revenue, as well as a 2007 appraisal. However, the Court has ruled that the 2007 appraisal cannot be used, and Plaintiffs have not identified any other evidence they will present to establish the present value of the Properties. In light of Plaintiffs' failure to disclose this damages theory during discovery and the lack of expert testimony to establish the present value of the Properties, the Court grants

25

Defendants' motion to strike this claim for damages. The Court may revisit this issue if necessary after it makes a determination as to whether the Properties should revert to Cafesjian.

8. <u>Attorneys' Fees and Litigation Costs</u>

Plaintiffs argue that they are entitled to the attorneys' fees and litigation costs associated with defending actions filed vexatiously by Defendants. "Under the American Rule, 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 433, 448 (2007) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). However, the courts have equitable powers to award attorneys' fees in certain situations, such as when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline*, 421 U.S. at 258-59 (citation omitted). Where awarded, however, attorneys' fees and costs are not considered "damages." Accordingly, the Court shall preclude Plaintiffs from presenting evidence regarding attorneys' fees and litigation costs during the trial of this action. Rather, the Court shall address Plaintiffs' request for attorneys' fees and costs in a postjudgment motion, if appropriate.

9. <u>Prejudgment Interest</u>

Plaintiffs seek to recover prejudgment interest on the amounts assertedly owed by Defendants. Defendants move to strike this claim for damages on the ground that prejudgment interest is not recoverable under D.C. law unless the debts are liquidated. *Schwartz v. Swartz*, 723 A.2d 841, 843 (D.C. 1998). As an initial matter, the Court notes that some of Plaintiffs' claimed damages may be liquidated, such as taxes paid on the Properties. Therefore, some prejudgment interest may be appropriate. Moreover, the D.C. courts have recognized that

prejudgment interest may be awarded when it is necessary to fully compensate the injured party. *See, e.g.*, *Fed. Marketing Co. v. Va. Impression Prods. Co.*, 823 A.2d 513, 531-32 (D.C. 2003); *Blake Constr. Co. v. C.J. Coakley Co.*, 431 A.2d 569, 580 (D.C. 1981) (holding that the decision whether to award prejudgment interest "is normally a matter left to the discretion of the jury or the trial court sitting without a jury."). Therefore, the Court shall deny Defendants' motion to strike Plaintiffs' claim for prejudgment interest.

      *F.*     *Plaintiffs' Objections to Defendants' Damages*

      Plaintiffs have objected to Defendants' claims for damages. Defendants have enumerated three categories of damages in this action: (1) $500,000 owed by Plaintiffs to CFF for failing to reissue and/or repay a promissory note; (2) $1,050,000 owed by the Assembly to Cafesjian as unjust enrichment for retaining donations while depriving Cafesjian of the rights associated with his donation; and (3) a yet-to-be determined amount of legal fees and costs owed to Cafesjian and Waters under the indemnification clause in AGMM's By-Laws. Plaintiffs object to the latter two categories of damages as not disclosed during discovery and untimely asserted.[2] The Court shall address each.

      1.     <u>Unjust Enrichment</u>

      Plaintiffs argue that Defendants failed to disclose their claim for unjust enrichment during discovery. It appears that this claim is based on a $1.05 million donation made by Cafesjian to the Assembly. Defendants argue that Cafesjian is entitled to a return of those funds because he

---

[2] Plaintiffs asserted a "cross motion to strike" in their opposition to Defendants' motion *in limine* to strike Plaintiffs' damages. Defendants argue that Plaintiffs' cross motion is untimely because it was not filed on September 10, 2010, the deadline for motions *in limine*. However, Plaintiffs timely asserted their objections to the Pretrial Statement, and therefore the Court shall consider them.

was suspended from the Assembly's Board of Trustees.  Plaintiffs dispute the factual basis for this claim, arguing that Cafesjian donated that money to become a "Life Trustee" of the Assembly, a position which Plaintiffs contend he still holds.  During the Pretrial Conference, Defendants conceded that they did not disclose this theory of damages in their answers to Plaintiffs' interrogatories regarding damages.  Therefore, the Court shall sustain Plaintiffs' objection to these damages and strike Defendants' claim for unjust enrichment.

### 2. Indemnification

Plaintiffs seek to strike Defendants' claim for indemnification based on the failure to disclose these asserted damages during discovery.  It is clear, however, that Defendants disclosed their claim for indemnification during discovery, and it appears to the Court that Defendants have provided documentation to Plaintiffs to support their claim.  Therefore, the Court shall not strike Defendants' claim for indemnification.

### G. *Deposition Designations*

The parties have designated excerpts of deposition testimony they seek to admit at trial. Defendants do not object to Plaintiffs' designations, but Plaintiffs object to many of Defendants' designations.  During the Pretrial Conference, Plaintiffs explained that they expect to resolve these objections based on the fact that most, if not all, of these witnesses will be testifying live at trial.  Therefore, the Court shall not address Plaintiffs' objections here.

Because these cases will be tried before the bench, the Court intends to ask the parties to submit their deposition designations as part of the record without reading excerpts in open court. The parties should prepare the designations they seek to have admitted before trial and file them on the docket by November 8, 2010, so that the Court may read the transcripts during the trial.

Any portions of the deposition transcripts not designated should be redacted from the transcripts filed as part of the record.

## H. *Testimony By Live Videoconference*

Plaintiffs indicated during the Pretrial Conference that they seek to have three witnesses testify by live videoconference: Sara Chitjian, Anoush Mathevosian, and Stephen Mehallis. Defendants do not object to Plaintiffs' request with respect to Ms. Chitjian or Ms. Mathevosian, and therefore the Court shall permit Plaintiffs to arrange for these witnesses to testify by videoconference. Plaintiffs also indicate that Mr. Mehallis, who resides in Florida, does not wish to take the time and expense of traveling to D.C. for trial. Defendants object to having him testify by videoconference, for various reasons. During the Pretrial Conference, the Court set forth a schedule for the parties to brief this issue if they could not resolve it on their own. Therefore, the Court shall address this issue in a separate order once briefing has been completed.

## I. *Subpoenas Issued to Witnesses Tanja Castro and Norman Glasgow*

On September 29, 2010, Plaintiffs filed a Motion for Protective Order seeking to have Defendants withdraw trial subpoenas issued to various of Plaintiffs' witnesses. On October 12, 2010, the Court issued an order granting the motion with respect to some witnesses and holding in abeyance with respect to subpoenas issued to two of Plaintiffs' witnesses, Tanja Castro and Norman Glasgow. The Court has concluded that these witnesses may testify at trial regarding the services that they performed for Plaintiffs. Defendants have served subpoenas *duces tecum* on these witnesses requiring them to produce documents relating to their work for Plaintiffs.

As the Court explained in its October 12, 2010 Order, the subpoenas issued to Ms. Castro and Mr. Glasgow are very broad in scope. The subpoena issued to Norman Glasgow requests,

*inter alia*, "[a]ny and all documents related to your work as AGMM's zoning and land use attorney." The subpoena issued to Tanja Castro requests "[a]ll documents related to the Armenian Genocide Museum and Memorial, Inc. and the Armenian Assembly of America . . . ." Courts have in certain circumstances approved trial subpoenas *duces tecum* that request only those documents necessary to impeach a witness or prepare for cross-examination. *See, e.g.*, *Malmberg v. United States*, No. 5:06-cv-1042, 2010 WL 1186573, at *3 (N.D.N.Y. Mar. 24, 2010) (approving trial subpoenas requesting documents disclosed during deposition for purposes of impeaching expert witness at trial). However, "[s]ubpoenas calling for 'any and all records' are exactly the kind of 'shotgun' subpoenas that should not be issued on the eve of trial." *Revander v. Denman*, No. 00 Civ. 1810, 2004 WL 97693, at *2 (S.D.N.Y. Jan. 21, 2004).

On October 22, 2010, Defendants filed a statement indicating that they were narrowing their requests for documents from Ms. Castro and Mr. Glasgow based on more specific proffers of their testimony from Plaintiffs. *See* Defs.' Resp. to Ct.'s Inquiry Re: Subpoenas Served upon Ms. Castro and Mr. Glasgow. Because Plaintiffs have not had an opportunity to respond to this narrowed request, the Court shall address the issue of these subpoenas in a separate order. Plaintiffs shall file their response to Defendants' latest filing by no later than 9:30 AM on October 26, 2010.

## CONCLUSION

As explained above, the Court finds that Plaintiffs may not properly serve Cafesjian with a trial subpoena beyond the geographic limitations of this Court in Rule 45(b)(2). With respect to Defendants' exhibits, the Court finds that Defendants' Exhibit 4 should not be excluded on authenticity grounds; that Rule 408 does not bar the admission of the pertinent portions of

Defendants' Exhibits 144 and 146 to prove notice and motive for filing the lawsuit; that Defendants' Exhibit 259 should not be admitted as an exhibit at trial; that Defendants' Exhibit 166 should be excluded based on Plaintiffs' conceded objection; and that Defendants' Exhibit 258 may be admitted on the basis that Plaintiffs have withdrawn their objection. With respect to Plaintiffs' witnesses, the Court finds that Mses. Castro and Eig and Messrs. Gallagher, Martinez, and Glasgow may testify factually about the work they performed for Plaintiffs but may not offer opinions based on their specialized knowledge or expertise because these witnesses were not designated as experts. The Court shall also preclude Plaintiffs from offering an expert witness from Chaney & Associates, Inc. based on failure to disclose as an expert. The Court shall permit Plaintiffs to call a recordkeeper from the D.C. Office of Tax and Revenue to authenticate tax assessment records. The Court shall defer rulings on Plaintiffs' motions *in limine* to exclude Defendants' expert until trial.

With respect to Defendants' motion *in limine* to strike Plaintiffs' damages claims, the Court hereby STRIKES Plaintiffs' claim for taxes paid since 2006 due to Defendants' failure to secure a legislative tax exemption, Plaintiffs' claim for increased design and construction costs, and Plaintiffs' alternative claim for the appreciated value of the Properties. The Court shall defer consideration of Plaintiffs' alternative damages claims until after the trial. The Court shall also consider Plaintiffs' request for attorneys' fees and costs and prejudgment interest after trial. In all other respects, Defendants' motion *in limine* is DENIED. The Court shall also STRIKE Defendants' claim for unjust enrichment based on the failure to disclose it during discovery.

Plaintiffs shall file their response to Defendants' filing with respect to the subpoenas served on Tanja Castro and Norman Glasgow by no later than 9:30 AM on October 26, 2010.

The parties shall prepare the designations they seek to have admitted before trial and file them on the docket by November 8, 2010, so that the Court may read the transcripts during the trial.

**SO ORDERED.**

Date: October 22, 2010

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge