UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ARMENIAN ASSEMBLY OF AMERICA, INC., *et al.*, <br><br> Plaintiffs/Counter-Defendants, <br><br> v. <br><br> GERARD L. CAFESJIAN, *et al.*, <br><br> Defendants/Counter-Plaintiffs. | Civil Action Nos. 07-1259, 08-255, 08-1254 <br> (CKK) |

MEMORANDUM OPINION
(February 20, 2013)

Following a twelve-day bench trial in November 2010, the Court held that Defendants/Counter-Plaintiffs John J. Waters and Gerard L. Cafesjian were entitled to indemnification from Plaintiff/Counter-Defendant Armenian Genocide Museum & Memorial, Inc. ("AGM&M") for legal expenses incurred in defending claims asserted against Waters and Cafesjian in their capacities as former officers of AGM&M. *Armenian Assembly of Am., Inc. v. Cafesjian*, 772 F. Supp. 2d 20, 126-27 (D.D.C. 2011) ("*Armenian Assembly I*"). The Defendants subsequently filed a motion seeking $2,875,058.23 in fees and expenses from AGM&M, which the Court referred to Magistrate Judge Alan Kay for resolution. Defs.' Suppl. Mot. for Attorney's Fees, ECF No. [220]; 5/9/2011 Order, ECF No. [309].[1] Magistrate Judge Kay issued a Report and Recommendation on April 24, 2012, recommending that the Court award the Defendants indemnification in the amount of $1,461,658.54. Report & Recomm. ("R&R"), ECF No. [352]. Presently before the Court are AGM&M's objections to Magistrate Judge Kay's

---

[1] For ease of reference, all docket entries refer to Case No. 07-1259.

R&R.[2]  Upon consideration of the pleadings,[3] the relevant legal authorities, and the record as a whole, the Court finds none of AGM&M's objections have merit.  The Court shall deduct $13,684.38 from the final award as agreed to by the parties, but the AGM&M's objections are OVERRULED.  Magistrate Judge Kay's Report and Recommendation is ADOPTED as modified below, for substantially the same reasons as articulated by Magistrate Judge Kay.

## I.  LEGAL STANDARD

Under Local Civil Rule 72.2(b), "[a]ny party may file written objections to a magistrate judge's ruling under [Local Civil Rule 72.2(a) ] within 14 days[.]"  Local Civ. R. 72.2(b).  Local Civil Rule 72.2(b) further provides that "[t]he objections shall specifically designate the order or part thereof to which objection is made, and the basis for the objection."  *Id.*  Pursuant to Local Civil Rule 72.2(c), "a district judge may modify or set aside any portion of a magistrate judge's order under this Rule found to be clearly erroneous or contrary to law."  *See also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any portion of the [magistrate judge's] order that is *clearly erroneous or is contrary to law*.") (emphasis added).  A court should make such a finding when the court "'is left with the definite and firm conviction that a mistake has been committed.'" *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't*, 659 F.3d 13, 21 (D.C. Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

---

[2]  The Defendants do not object to the Report and Recommendation, but indicated they intend to supplement their request based on newly incurred costs "at an appropriate time."  Defs.' Notice at 1.

[3]  While the Court's decision is based on the record as a whole, the Court's analysis focuses on the following documents: Pl.'s Objs., ECF No. [358]; Defs.' Resp., ECF No. [363]; Pl.'s Reply, ECF No. [364]; Defs.' Surreply, [366-1]; and Pl.'s Surreply, ECF No. [368].  Both parties moved for leave to file a surreply.  The Court shall grant both motions, and considered both pleadings in resolving the Plaintiff's objections.

## II. DISCUSSION

*A.     AGM&M's Status as a Private Foundation Does Not Preclude Indemnification*

Initially, AGM&M objects to Magistrate Judge Kay's refusal to revisit the Court's earlier decision that AGM&M's status as a private foundation does not preclude AGM&M from indemnifying the Defendants. Pl.'s Objs. at 14. The indemnification provision of AGM&M's By-laws indicates that the corporation will indemnify any former trustee or officer "against any and all expenses and liabilities actually and necessarily incurred by him . . . in connection with any claim, action, suit or proceeding . . . in which he or she is or may be made a party by reason of having been [a] Trustee[]" or officer. Pls.' Tr. Ex. 122 (PX-122), § 4.1. The availability of indemnification is limited by Section 4.3 of the By-laws, which provides that

> [I]f at any time the Corporation is deemed to be a private foundation within the meaning of Section 509 of the Code then, during such time, no payment shall be made under this Article if such payment would constitute an act of self-dealing or a taxable expenditure, as defined in Section 4941(d) or Section 4945(d), respectively, of the [Internal Revenue] Code.

*Armenian Assembly of Am., Inc. v. Cafesjian*, 772 F. Supp. 2d 129, 151 (D.D.C. 2011) ("*Armenian Assembly II*"). AGM&M asserts (and the Defendants do not dispute) that AGM&M is currently considered a private foundation by the IRS. Pl.'s Objs. at 14 & Ex. B (IRS Exempt Org. Select Check for AGM&M). Pursuant to section 4941(d)(1), "self-dealing" includes payment of compensation or transfer of income/assets of the foundation to a "disqualified person." 26 U.S.C. § 4941(d)(1)(D), (E). Per section 4946, officers like Defendants Waters and Cafesjian are "disqualified persons." 26 U.S.C. § 4946(a)(1)(B), (b)(1).

As previously noted by the Court, under certain circumstances, Treasury regulations provide that indemnification of former officers does not constitute self-dealing for purposes of section 4941(d). *Armenian Assembly II*, 772 F. Supp. 2d at 151. Pursuant to 26 C.F.R.

3

§ 53.4941(d)–2(f)(3),

> section 4941(d)(1) shall not apply to the indemnification by a private foundation of a foundation manager, with respect to the manager's defense in any civil judicial or civil administrative proceeding arising out of the manager's performance of services (or failure to perform services) on behalf of the foundation, against all expenses (other than taxes, including taxes imposed by chapter 42, penalties, or expenses of correction) including attorneys' fees, judgments and settlement expenditures if—
>
>> (A) Such expenses are reasonably incurred by the manager in connection with such proceeding; and
>>
>> (B) The manager has not acted willfully and without reasonable cause with respect to the act or failure to act which led to such proceeding or to liability for tax under chapter 42.

The Court thus held that "the By–Laws provision precluding payment of indemnification where it constitutes self-dealing does not preclude the Court from ordering AGM&M to pay Cafesjian and Waters for the reasonable expenses they incurred in defending their claims." *Armenian Assembly II*, 772 F. Supp. 2d at 152. Magistrate Judge Kay declined AGM&M's invitation to revisit this ruling. AGM&M now argues that indemnifying Waters and Cafesjian would amount to self-dealing under the relevant Treasury regulation because (1) Waters and Cafesjian breached their fiduciary duties to AGM&M, and thus acted "willfully and without reasonable cause"; and (2) the expenses incurred were not reasonable. Neither argument has merit.

AGM&M argues that Waters' and Cafesjian's acted willfully and without reasonable cause by: (1) "failing to take a more aggressive approach in soliciting contributions" for the museum project; (2) "initiating lawsuits against AGM&M (and refusing to arbitrate these matters)"; and (3) "generating adverse press . . . against AGM&M and its trustees." Pl.'s Objs. at 16. The Court previously determined as a matter of law that none of these actions constituted breaches of Waters' or Cafesjian's fiduciary duties AGM&M. *Armenian Assembly I*, 772 F. Supp. 2d at 107-116. The Court specifically found, among other things, that "the Board's

4

inability to reach agreement over an architect prevented the implementation of any fundraising initiatives," *id.* at 108, Cafesjian's lawsuit seeking rescission of the Grant agreement was not filed in bad faith, and "Cafesjian filed the lawsuit to protect his contractual rights, which he was entitled to do," *id.* at 114.  With respect to the allegedly "adverse press," the Court found that "there is no evidence in the record that any of the published statements were inaccurate or defamatory," and thus the articles were not published in bad faith to harm AGM&M. *Id.* at 115. Cafesjian and Waters did not act "willfully or without reasonable cause" as alleged by AGM&M.

With respect to AGM&M's second argument, as set forth *infra*, Magistrate Judge Kay's proposed methodology sufficiently accounts for any potentially excessive billing entries, ensuring the overall award is reasonable.  The Defendants satisfy the requirements of the relevant Treasury regulation, 26 C.F.R. § 53.4941(d)–2(f)(3), therefore indemnification of the Defendants as required in this case does not constitute prohibited self-dealing under the Internal Revenue Code.

      B.      *The Fees Sought Were Necessarily Incurred by the Defendants*

Second, AGM&M contends that Magistrate Judge Kay erred in finding the fees sought were "necessarily incurred" by the Defendants as required by Section 4.1 of the AGM&M By-laws.  AGM&M argues that none of the Defendants' requested fees were "necessarily incurred" because "[a]ll of the litigation that the Court consolidated followed from the initial suit filed by Cafesjian." Pl.'s Objs. at 19.  As Magistrate Judge Kay explained,

> Plaintiffs cite no case law or bylaws provision that would preclude indemnification based on the claim being brought as a counterclaim.  That Defendants were the first to initiate a suit against Plaintiffs in the web of litigation surrounding AGM&M is irrelevant.  Defendants *had* to oppose the claim for breach of fiduciary duty as to AGM&M or default as to that claim, and hiring legal representation was *necessary* to oppose the claim.

R&R at 3 (emphasis added).  The Court agrees.  Cafesjian did not file the initial lawsuit in bad

faith, but rather to protect his contractual rights. *Armenian Assembly I*, 772 F. Supp. 2d at 114. At the point AGM&M elected to file the counterclaim for breach of fiduciary duty against Waters and Cafesjian, it became necessary for the Defendants to hire legal counsel and oppose the claim. Thus, the fees sought by the Defendants were "necessarily incurred" as required by AGM&M's By-laws.

### C.   *Indemnification at a Reduced Rate Is Appropriate for Blended Expenses*

The Court previously held that "AGM&M shall be required to indemnify Waters and Cafesjian for expenses related to their defense of claims brought by Plaintiffs. However, they are not entitled to indemnification with respect to affirmative claims that they have litigated against the Assembly or AGM&M." *Armenian Assembly I*, 772 F. Supp. 2d at 126. As Magistrate Judge Kay explained, most of the time entries submitted from the Defendants' attorneys constitute "blended entries," reflecting work undertaken "in the context of the litigation generally, such as at trial or in the writing of briefs to the Court." R&R at 5. "Recognizing that precision is not achievable," Magistrate Judge Kay recommended that the Court apply award indemnification rate of 50% for blended entries. *Id.* at 8. AGM&M objects to any indemnification for blended entries, as well as the recommended formula of 50%.[4]

In referring the fee issue to Magistrate Judge Kay for resolution, the Court indicated that "[t]he magistrate judge may review Defendants' categorization of 'blended' expenses and determine whether there is a more appropriate methodology for separating which expenses should be indemnified and which should not." *Armenian Assembly II*, 772 F. Supp. 2d at 154.

---

[4] On page 29 of its Objections, AGM&M argues that the Court "must also re-visit the basis of its conclusion that AGM&M failed to prevail" on the issue of indemnification. Even assuming AGM&M's Objections were the proper vehicle with which to raise these arguments, the Court has previously rejected each of AGM&M's contentions.

Accordingly, Magistrate Judge Kay determined that the blended entries "cannot be attributed to one specific claim with any degree of certainty." R&R at 5. Thus, Magistrate Judge Kay recommended indemnifying blended entries at a rate of 50% to reflect "the complexity and importance of the AGM&M breach of fiduciary duty claim while acknowledging that the other three claims regarding the Assembly were also litigated." *Id.* at 8.

AGM&M contends that Magistrate Jude Kay "ignored the Court's directive in reviewing the blended fees" by (1) "failing to arrive a more appropriate methodology"; and (2) "failing to determine which fees were 'actually and necessarily incurred.'" Pl.'s Objs. at 31. Both contentions are meritless. First, the Court did not order Magistrate Judge Kay to develop a different methodology, but rather left if to Magistrate Judge Kay to determine whether a more appropriate methodology could be employed. *Armenian Assembly II*, 772 F. Supp. 2d at 154. Magistrate Judge Kay determined that there was not a better methodology that could be utilized because the blended entries could not be apportioned between claims "with any degree of certainty." R&R at 5. This conclusion is entirely consistent with the Court's instructions.

Second, the Court did not require Magistrate Judge Kay to examine each time entry individually in order to determine whether it was "actually and necessarily incurred." The Court merely indicated that Magistrate Judge Kay "*may* [] review Plaintiff['s] objections to particular expenses and make decisions about which expenses were 'actually and necessarily incurred' within the meaning of the indemnification provision." *Armenian Assembly II*, 772 F. Supp. 2d at 154. Magistrate Judge Kay reasonably concluded that an indemnification rate of 50% for blended entries would properly account for any excessive billing "not subject to indemnification." R&R at 9. The Plaintiff offers no legal authority in support of its position, except to say that "[t]his Court has the discretion to deny Defendants' request due to its inability

to document the time spent on the sole count for which it is entitled to indemnification." Pl.'s Objs. at 30. Magistrate Judge Kay's findings and recommendations regarding the blended entries are not clearly erroneous. Therefore, the Court shall, in its discretion, adopt the recommended approach.

Additionally, AGM&M takes issue with Magistrate Judge Kay's use of 50% as the appropriate rate for indemnifying blended entries. AGM&M's contentions on this issue simply attempt to re-argue points rejected by Magistrate Judge Kay, and do not provide a basis for setting aside the Report & Recommendation. Magistrate Judge Kay thoughtfully analyzed the parties' proposed formulas, concluding that

> Defendants' proposed 67 percentage overstates the importance of the AGM&M breach of fiduciary duty claim and Plaintiffs' proposed 19 percentage understates the importance of the AGM&M breach of fiduciary duty claim. . . . 50 percent reflects the complexity and importance of the AGM&M breach of fiduciary duty claim while acknowledging that the other three claims regarding the Assembly were also litigated.

R&R at 8. One of AGM&M's arguments warrants mention. AGM&M argues that

> Had AGM&M not alleged breach of fiduciary duty, Cafesjian and Waters would still have incurred all of the fees at issue in their efforts to block AGM&M from proceeding with the development of the museum and memorial and their efforts to enforce the reversionary rights in the Grant Agreement. This is because the issue of the return of the Grant Properties, not breach of fiduciary duty, was the most consequential aspect of the litigation.

Pl.s' Objs. at 32. This argument is meritless, for several reasons. First, the argument suffers from hindsight bias: although one can argue now, after the Court's ruling on the merits of the parties' claims, that reversion of the Grant Properties was "the most consequential aspect of the litigation," this was not necessarily foreseeable at the time the fees were incurred---that is, when all of parties' claims were still pending. Second, AGM&M's conclusion does not follow from the suggested premise. By definition, fees incurred by the Defendants in responding to the

breach of fiduciary duty allegations would not have been incurred if AGM&M had not filed its counterclaim, regardless of the importance of other claims in the litigation. Magistrate Judge Kay's recommended approach of applying a 50% indemnification rate to blended entries complied with Court's instructions and is not otherwise clearly erroneous or contrary to law.

>  D.  *Use of the Laffey Matrix Is Not Appropriate in this Case*

AGM&M next argues that Magistrate Judge Kay erred in not applying the *Laffey* Matrix to determine the appropriate hourly rates for the Defendants' attorneys. AGM&M argues that the Defendants have the burden to establish that the hourly rates charged by their attorneys are "reasonable." Pl.'s Objs. at 45. Both of the cases cited by AGM&M for this principle are inapposite because they involved statutory fee shifting provisions awarding only "reasonable" attorney's fees to the prevailing party. *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (interpreting "[t]he fee shifting provision embraced by 42 U.S.C. § 1988(b), covering federal civil rights actions"); *Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 118 (D.D.C. 2010) (applying the fee shifting provision in the Individuals with Disabilities Education Act). The indemnification provision in the AGM&M By-laws "does not use language that would signal a desire to follow the *Laffey* Matrix." R&R at 4. "Furthermore, the Plaintiff, AGM&M, was represented by attorneys from K&L Gates, a firm that bills at rates above the *Laffey* Matrix, suggesting that a trustee's indemnification pursuant to the bylaws would not be limited to *Laffey* rates." *Id.* at 4-5. AGM&M fails to show that Magistrate Judge Kay's recommendation is clearly erroneous or contrary to law. Therefore, the Court shall accept the hourly rates charged by the Defendants' attorneys.[5]

---

[5] In any event, as Magistrate Judge Kay explained, the *Laffey* matrix rates are inappropriate in this case because "[a]ttorneys who receive fee awards pursuant to fee shifting

### E.   *Waters Is Entitled to Indemnification from AGM&M*

Fifth, AGM&M contends that Defendant Waters is not entitled to indemnification from AGM&M in light of Waters' suit in the District of Minnesota alleging, among other things, that he is entitled to indemnification from the Cafesjian Family Foundation for expenses incurred in connection with this litigation. *See Waters v. The Cafesjian Family Found., Inc.*, No. 12-648, Complaint (D. Minn. filed Mar. 13, 2012). AGM&M argues that the Court should reduce the indemnification amount by $511,000---the amount sought by Waters as indemnification from the Cafesjian Family Foundation in the Minnesota litigation. This argument is nonsensical. Waters did not pay any of fees for which the Defendants now seek indemnification. Cafesjian himself paid most of the bills, and Magistrate Judge Kay eliminated any fees paid directly by the Cafesjian Family Foundation. R&R at 10; *see also* Suppl. Decl. of William G. Laxton, Jr., ECF No. [348-5], ¶ 2. By definition, the Minnesota Complaint concerns only expenses incurred by Waters that have not been paid by Cafesjian or the Cafesjian Family Foundation, whereas all of the fees sought in this case were specifically paid by Cafesjian. The Minnesota litigation has no bearing on AGM&M's obligation to indemnify Waters and Cafesjian with respect to this case.

### F.   *Objections to Specific Entries*

Finally, AGM&M objects to the inclusion of various time entries, which the Court shall address in three categories: (1) entries purportedly related to claims other than the breach of fiduciary duty claim for which the Defendants are entitled to indemnification; (2) entries purportedly related to work performed on behalf of the Cafesjian Family Foundation; and (3) allegedly "excessive" entries. In its initial objections, AGM&M identified 59 entries or groups

---

statutes generally do not bill clients for their time on the case, so the hourly rates are intended to reflect the reasonable hourly rate prevailing in the community for similar work." R&R at 4.

of entries in the first two categories, twenty-four of which the Defendants previously withdrew from their request for indemnification. The Court shall address the remaining disputed entries in each category.[6]

First, AGM&M objects to nine entries or groups of entries on the grounds that work performed in each entry related to claims other than the breach of fiduciary duty claim for which the Defendants are entitled to indemnification. Eight of these entries[7] were identified by the Defendants as blended in their submission to Magistrate Judge Kay, and the description of the work performed reasonably encompasses work that related at least in part to the fiduciary duty claim. Application of the 50% formula to these entries properly addresses the fact that some of the work may have been in connection with other claims. No further adjustments are appropriate for these eight entries. The Defendants agreed to reduce the amounts sought with respect to the entries collectively identified as entry "number 5," as set forth below:

| Attorney | Billable Rate | Hours Deducted | Entry Type | Total Amount Deducted From Final Award |
|---|---|---|---|---|
| Cullen | 850 | 1.25 | Blended | 531.25 |
| Laxton | 275 | 15.25 | Blended | 2,096.88 |
| Laxton | 275 | 9.25 | Indemnified | 2,543.75 |
| Krantz | 400 | 29.00 | Blended | 5,800 |
| Davis | 350 | 2.5 | Blended | 437.5 |
| Ramsey | 325 | 14.00 | Blended | 2,275 |

---

[6] All references are to the numbers used by the Defendants to identify the disputed entries in their Response. *See* Defs.' Resp., Ex. A, ECF No. [363-1].

[7] Nos. 10, 16, 37, 51, 52, 53, 54, & 55.

| | | | TOTAL: | 13,684.38 |
|---|---|---|---|---|
| | | | | |

The Court shall deduct $13,684.38 from the final award, as agreed to by the parties.

Second, AGM&M objects to twenty-six entries[8] on the basis that the entries reflect work performed on behalf of the Cafesjian Family Foundation, rather than Cafesjian or Waters. According to AGM&M, the Defendants agreed to withdraw all entries referring to "CFF" rather than Cafesjian, but failed to remove these twenty-six entries. The Defendants contend that they agreed to withdraw specific entries identified by AGM&M, but did not agree to a wholesale revision of their request on this basis. Thus, the Defendants argue AGM&M's failure to identify these twenty-six entries during the initial briefing before Magistrate Judge Kay waived any possible objection at this stage.

In calculating the final recommended award, Magistrate Judge Kay noted that Defendants agreed not to request indemnification for $11,239.25 in blended entries "where the description of the time entry refers to 'the Cafesjian Family Foundation,' instead of 'Cafesjian.'" R&R at 12. Magistrate Judge Kay cited the Defendants' Second Supplemental Reply for this concession, which specifically stated

> As addressed in our last filing on this issue (Document 348), the fact that certain time entries refer to CFF instead of Cafesjian is irrelevant to the indemnification issue. Both CFF and Cafesjian were named parties and the CFF description was sometimes used when performing tasks related to the fiduciary breach claim. Further, discovery requests in the fiduciary breach action were made to Cafesjian as well as CFF. In any event, to remove further dispute between the parties, Mr. Cafesjian agrees to reduce the amount of indemnified fees by $11,239.25, as reflected in the attached spreadsheet.

Defs.' Second Suppl. Reply, ECF No. [351], at 1. There is nothing in the Report and Recommendation or the filing by the Defendants cited by Magistrate Judge Kay to indicate the

---

[8] Nos. 13, 15, 17, 18, 20, 22, 24-33, 35, 36, 38, 41, 42, 44, 45, 47, 48, & 50.

Defendants agreed to withdraw *all* entries referring to "CFF" rather than Cafesjian, including those not previously identified by AGM&M.  Neither Magistrate Judge Kay nor the Defendants were "tasked" with removing the additional entries as AGM&M contends.  AGM&M waived any objection to these entries by failing to specifically object to the entries before Magistrate Judge Kay.

Third, AGM&M objects to dozens of time entries it views as excessive on the grounds (1) too much time was spent drafting certain pleadings or administrative tasks; (2) more than one attorney attended a deposition; and (3) summer associates were used to conduct legal research. Magistrate Judge Kay, in recommending the Court use the 50% formula with respect to blended entries, took these (arguably) excessive entries into account.  R&R at 7-8.  The Report and Recommendation specifically identifies one of the pleadings AGM&M takes issue with, as well as the research performed by summer associates.  *Id.* at 7 n. 5, n.6.  Magistrate Judge Kay reasonable accounted for potentially excessive billing practices as part of the 50% formula, a decision that is neither clearly erroneous, nor contrary to law.  No further reduction is necessary.

## IV.  CONCLUSION

For the foregoing reasons, none of AGM&M's objections to Magistrate Judge Kay's Report and Recommendation have merit.  Indemnifying Defendants Waters and Cafesjian does not constitute prohibited self-dealing under the relevant Treasure regulations and the Internal Revenue Code.  The requested fees were necessarily incurred by the Defendants in order to respond to the counterclaim filed by AGM&M against the Defendants in their capacities as former trustees/officers of the corporation.  Magistrate Judge Kay's recommended approach of indemnifying blended billing entries properly accounts for the role the breach of fiduciary duty claim played in the litigation, while adjusting for potentially excessive billable entries.  The

AGM&M By-laws do not require the Defendants to establish the reasonableness of the billable rates charged by their attorneys, and the *Laffey* Matrix is inapplicable.  The litigation between Waters and the Cafesjian Family Foundation in Minnesota does not relief AGM&M of the obligation to indemnify the Defendants.  Finally, none of AGM&M's objections to specific time entries have merit, though the Court shall reduce the overall indemnification award by $13,684.38, to a total of $1,447,974.15 as agreed by the parties.  Accordingly, AGM&M's [358] Objections to the Magistrate Judge's April 24, 2012 Report and Recommendation are OVERRULED.  Magistrate Judge Kay's Report and Recommendation is ADOPTED as modified above, for substantially the same reasons as articulated by Magistrate Judge Kay.

An appropriate Order accompanies this Memorandum Opinion.

                                                */s/*
                                                **COLLEEN KOLLAR-KOTELLY**
                                                UNITED STATES DISTRICT JUDGE